CARL BARDORF and Another, Respondents, *v.* REBECCA TALBOT-PERKINS ADOPTION SOCIETY, INC., Appellant, Impleaded with Others, Defendants.

Second Department, February 23, 1934.

*Emily Holt*, for the appellant.

*W. H. K. Davey* [*Aaron Gleicher* with him on the brief], for the respondents.

Davis, J.   The motion to dismiss the amended complaint on the ground that it did not state facts sufficient to constitute a cause of action was denied.   The question of jurisdiction was disposed of at Special Term by holding that the plaintiffs were not entitled to maintain the action for specific performance; but that a cause of action for damages was stated.   With these conclusions we agree.

The question is novel, and is one practically of first impression. In stating the facts we will, of course, assume every material allegation in the amended complaint to be true, and will give the plaintiffs the benefit of the most favorable inferences to be drawn from the facts stated.

The defendant is a society duly incorporated and authorized to receive and place infants for adoption.   Its consent takes the place of that of actual parents when the proceedings for adoption come before the proper court.   (Dom. Rel. Law, § 115.)   We will assume that under its rules and regulations and the agreements made for placing children, the society must be satisfied, before consent is given, that the proposed foster parents are fit and suitable persons and that the moral and temporal interests and welfare of the child will be promoted.   Even then the court must be satisfied by the facts presented, or by investigation, before the order of adoption is finally made.   (Dom. Rel. Law, §§ 112, 113.)

On March 12, 1931, defendant society surrendered to the plaintiffs a child about two years of age for purposes of adoption — exacting a fee of $100, of which $55 was paid immediately and the balance of $45 was to be paid upon completion of the formal adoption proceeding.   Under the rules and regulations of the society, to which plaintiffs assented, the child was to remain with the latter for a period of one year before the proceedings for formal adoption were to be initiated.   This probationary period was established, we assume, so that the adoptive parents may become certain that they are able to adjust and harmonize themselves in this new relation; and may determine that the child is of such character, temperament and adaptability that genuine affection will arise between both in the course of kind and considerate treatment. On the part of the society, opportunity is furnished to discover the

type, character and general fitness of the proposed adoptive parents in view of the ultimate object of the welfare of the child — particularly in relation to the affection developed and the treatment given to the child. The financial status of the parties and their sense of responsibility for the care, maintenance and education of the child are also important factors as bearing on the child's future welfare. The period is naturally one of experiment, with either party at liberty to withhold final action. During the period the tentative foster parents are required to support and maintain the child without compensation.

In this case, for some undisclosed reason, the society on November 11, 1931, demanded the return of the child, and two days later Mrs. Bardorf brought it back. At that time she informed the society that a surgical operation was necessary for the preservation of the health of the child and its proper development, and that she had arranged to have such an operation performed. She added that she and her husband were willing to go to this expense " provided said defendant would permit her again to take the said child and keep and maintain it in plaintiffs' home until March 12th, 1932, and would then consent, in due form of law, to the adoption of the said child by the plaintiffs." It is alleged that the society assented to this arrangement and again delivered the child to plaintiffs — agreeing to consent to the adoption immediately after March 12, 1932.

The plaintiffs took the child into their home, had the operation performed at considerable expense, and maintained the child until March twelfth. It is alleged that their care, education and maintenance of the child during this period were in all respects proper, adequate and sufficient for its needs and welfare, and were satisfactory to the society and approved by it. Nevertheless, shortly after March twelfth the society refused to sign a consent for adoption, but took the child from plaintiffs' home and placed it with others for another probationary period. The society refused to disclose to plaintiffs the names of these persons, gave no reason for its action, and did not pay or offer to reimburse plaintiffs in any manner. It is further alleged that the plaintiffs are in all respects fit and proper persons to have the care and custody of the child; that nothing has occurred to indicate the contrary, and that the action by the society " was arbitrary, and without just or any cause." This action was brought for specific performance of the agreement or in the alternative to recover damages for expenditures and services.

Neither party was required to agree positively as to definite future action. A contract of that nature would be void as against

public policy where the primary consideration was the welfare of the child. But in incorporating the society and granting to it unusual powers, the State did not delegate to it any arbitrary authority or permit it to conduct its activities in bad faith. On November 11, 1931, the society must have had some knowledge of the fitness of plaintiffs as foster parents. If it was then advised that they were not proper and suitable persons, the child should have been permanently recalled. If it were in doubt, it might have made a tentative agreement for a further period of experiment, advising the plaintiffs that final consent on its part would depend on what occurred during the remaining four months. If, as is claimed, the society agreed to consent, then that fact implies that thus far it was satisfied and that, if nothing occurred to change its view, final consent would readily be given. As the case stands, nothing did occur upon which a determination of lack of fitness could reasonably be based.

Therefore, there would seem to be a breach of implied good faith on the part of the society. It obtained an unjust enrichment by having the surgical operation performed at the expense of the plaintiffs, and was thereby enabled to have a healthier and more desirable child to place with others at a new fee. It was a species of fraud if they led the plaintiffs to believe that if they undertook the expense of the operation it was the intent of the society to consent to adoption if nothing occurred thereafter to demonstrate their unfitness — if, in fact, its officers had no such intent. It may constitute fraud to make representations of intent which are false, and upon which another relies. (*Adams* v. *Gillig*, 199 N. Y. 314.)

While ancient law and the Roman and civil law recognized adoption, it was not a part of the common law, and in this country adoption depends entirely upon statute. Contracts for adoption, however, have a recognized validity in this State under certain circumstances where there has been no formal act of the court in relation thereto. (*Winne* v. *Winne*, 166 N. Y. 263; *Healy* v. *Healy*, 55 App. Div. 315; affd., 166 N. Y. 624, on opinion in *Winne* case; see, also, *Sandham* v. *Grounds*, 94 Fed. 83.) But such contracts, to be enforcible, must be established by clear and convincing proof. (*Hamlin* v. *Stevens*, 177 N. Y. 39; cf. *McKeon* v. *Van Slyck*, 223 id. 392; *Ward* v. *N. Y. Life Ins. Co.*, 225 id. 314.)

There is an absence of authority on the precise question as to whether a recovery may be had under circumstances such as those we have detailed. In *Beach* v. *Bryan* (155 Mo. App. 33) there is a dictum (p. 50) to the effect that the adoptive parent may recover for expenditures where there has been breach on the part of a parent by failure to consent to an adoption earlier agreed upon. Further than that, no authority has been discovered.

We are dealing with a question of pleading. On the trial there will be presented a mixed question of law and fact and the plaintiffs will have the burden of establishing all controverted facts by clear and convincing evidence, and will no doubt be held to a rigid rule of proof.

For the reasons stated, the order should be affirmed, without costs, with leave to appellant to answer within ten days from the entry of the order herein.

LAZANSKY, P. J., YOUNG, KAPPER and TOMPKINS, JJ., concur.

Order denying motion to dismiss the amended complaint affirmed, without costs, with leave to appellant to answer within ten days from the entry of the order herein.