Richards W. Hannah, J.
This petition presents a novel question of whether a father can set up an alleged agreement with the stepfather and the mother to adopt his children as a complete defense to a petition for their support. Research has failed to reveal a similar case.
*351 The petitioner has brought a petition against her former husband for the support of their two children under article 4 of the Family Court Act. The respondent resists the petition upon certain grounds, which will be detailed later. Upon consent, a temporary order has been entered for $22.50 weekly without prejudice.
The parties were married on December 23, 1956 in the City and State of New York. Two children were born to them: “ Gloria Ruth” and “Margaret”. On March 10, 1961 they executed a separation agreement whereby the wife received custody of the children and the husband reasonable visitation rights. The husband agreed to pay $105 monthly for the support and maintenance of the children. This amount was to be increased under certain conditions. The agreement provided that it shall survive a divorce between the parties and be incorporated in any divorce decree that may be obtained by either party.
On June 6, 1961 the husband obtained a divorce in the First Civil Court, District of Bravos, City of Juarez, Mexico. The wife appeared by attorney and answered the complaint. The decree provided that “ the status of the minor children issue of the marriage, namely [“ Gloria Ruth”] and [“ Margaret Jane”], will be governed by the stipulations contained in the agreement entered into by the parties ” and that the agreement entered into between the parties whereby ‘ ‘ the husband shall pay the wife the sum of $170.00 per month, of which $65.00 per month shall be for the maintenance and support of the wife and $105.00 per month for the support and maintenance of the children subject to the terms and conditions therein stipulated is hereby, incorporated, by reference, into this judgment, made a part hereof and approved by the Judge.”
On or about July 1, 1962 the wife married “ Thomas Smith ”. The respondent also remarried. On August 14, 1962 an agreement was entered into by “ Sam Jones ”, “ Jane Smith ” and ‘ ‘ Thomas Smith ’ ’ which provided that ‘ ‘ the parties hereto consider it desirable and for the best interests of the children for them to be raised as the children of [“Jane”] and [“ Thomas ”].” It was agreed that the separation agreement of March 10,1961 is hereby rescinded and revoked and declared to be null and void and of no further effect; that “ Sam ” shall have no further custody or visitation rights to the children, and “Sam” hereby specifically renounces and gives up any and all rights and privileges to the children; that “Sam” shall henceforth make no effort to visit with, molest or disturb the children in any way; that “Jane” and “Thomas” hereby *352 renounce and give up any rights to contribution from “ Sam ” for the support and maintenance of the children; that “ Jane ” and “ Thomas ” shall henceforth make no effort to require “ Sam to make payments for and in behalf of the children and shall institute no action at law or equity to require such payments of any sums of money by ‘1 Sam ’ ’ for and on behalf of the children; that “ Thomas ” will institute an action for the adoption of the children as soon as is reasonably practicable ; that ‘ ‘ Sam ’ ’ agrees to give his consent to such adoption and will do everything necessary to help and assist in the adoption of the children by ‘ ‘ Thomas ’ ’; that ‘ ‘ Sam ’ ’ agrees that the last name of the children shall be changed to ‘ ‘ Smith ’ ’; that “ Sam ” hereby pays to “ Jane ” and “ Thomas ” the sum of $1,000, and that “ Sam ” agrees to pay for the cost of drawing this agreement and also the costs of the adoption of the children and agrees to hold “ Jane ” and “ Thomas ” harmless as to any and all expenses arising therefrom and that no modification or waiver of any of the terms hereof shall be valid unless in writing and signed by the parties. The agreement shall be governed by the laws of New York.
The respondent urges that the alleged adoption agreement has released him from any further support of his children since that it is an adoption agreement with adequate consideration and not against public policy, that this court does not have the authority to set aside support provisions contained in an agreement to adopt, and assuming the court has authority to disregard the support provisions contained in the separation agreement and to make a ruling in regard only to the welfare of the children, it should still find in favor of the respondent.
Both at common law and by statute New York has always treated a father as absolutely responsible in keeping with his ability for the support of his dependent minor child and there is no doubt whatever that neither a separation agreement nor a final decree of divorce, nor a remarriage, nor the fact that the mother has legal custody of the child terminates that liability. (Family Ct. Act, §§ 413, 461; Social Welfare Law, § 101; Landes v. Landes, 1 N Y 2d 358, 365; Penal Law, § 482.) An article in the Brooklyn Law Review (vol. 27, p. 284 [April, 1961]) entitled “ Support of the Child” deals extensively with this duty of support. A father cannot contract away his duty to support his child with either the mother or a third person (D. M. E. v. D. D. E., 179 Misc. 406; “ Fulde ” v. “ Stone ”, 196 Misc. 732 revd. on other grounds 277 App. Div. 1123), that the father’s obligation continues even if his child has property (Matter of Cohn, 153 Misc. 757), or the mother has property (Langerman *353 v. Langerman, 203 Misc. 230), and a father cannot escape legal liability to support a child or a contract to pay a periodic sum for such support by bankruptcy (Dunbar v. Dunbar, 190 U. S. 340). Section 437 of the Family Court Act provides that a father is presumed to have sufficient means to support his minor children. These are examples of how seriously the law looks upon his duty to support.
How can a father be relieved of this duty? The answer appears to be one or more of the following: emancipation, marriage, adoption, abandonment of the father by a child who is physically and mentally able to take care of himself, a statute, or a court decree. None of these elements are present here.
While an agreement to adopt is not against public policy and is a part of adoption proceedings, it does not terminate the father’s duty to support. A father is relieved only after an order of adoption has been signed and filed (Matter of Munch, 155 Misc. 836; Domestic Relations Law, § 117). It is only then that the foster parents become responsible for the child and the duties imposed upon the natural parents cease entirely. (Betz v. Horr, 276 N. Y. 83.) There was no adoption order made in this case. In fact no such proceedings were ever started. Certainly, respondent cannot compel the adoption by an action for specific performance (Bardorf v. Rebecca Talbot-Perkins Adoption Soc., 240 App. Div. 275). Moreover, the alleged adoption agreement here falls short of the usual wording in an agreement to adopt since the foster father has failed to agree to treat the children as his own, to assume the duties of a father toward them, to agree that he shall support them and that they shall be his heirs. (Matter of Bamber, 147 Misc. 712.)
Any agreement which relieves a father of the support of his child is as equally objectionable as one which relieves him of the support of his wife. (Domestic Relations Law, § 51; Haas v. Haas, 298 N. Y. 69.) To permit a father to make such an agreement with either a wife or a third person would open the door to fraud and present an easy way to escape his duty. He could contract with a wholly irresponsible person or for an amount totally inadequate as measured by his ability to pay. Neither our courts nor a child is bound by the terms of a separation agreement in deciding the amount for a child’s support (Van Dyke v. Van Dyke, 305 N. Y. 671). This is so even if the agreement is incorporated in the divorce decree. A child’s right to support cannot be affected by a separation agreement since a child has no standing to attack it or the divorce decree into which it is incorporated, or even to enforce a separation *354 agreement favorable to it. (Farah v. Farah, 303 N. Y. 865; Hochstein v. Berghauser, 123 Cal. 681.) Therefore the children in this case are bound neither by the terms of the separation agreement npr the divorce decree nor the so-called adoption agreement. Hence, it makes little difference that the separation agreement was rescinded or if the divorce decree had been amended accordingly to provide for the recession, since respondent’s duty to support remains regardless. They always have the right to support by their father. Even if a father contracts with a third party for such support, he cannot escape his primary duty to support his child. In Bowen v. State (56 Ohio St. 235, 239) the court, in commenting upon such a contract, said: “ The design of the statute * * * was to enforce * * * the fulfillment of the father’s duty to the public; and it would obviously fail of its purpose if he could, by agreement with another, relieve himself from responsibility for his omission to provide the support for his children which the statute requires; for he might so contract with wholly irresponsible parties. He undoubtedly may contract with another person for the maintenance of his children, if he chooses to do so, and may exact such security for the performance of the agreement as he may deem necessary, or be able to obtain, and in that way protect himself as against the other contracting party from further expense in that behalf. But the duty he owes the public of saving it from the expense of supporting his children, is personal and continuing, and cannot be affected by any agreement he may make with another. He must answer to the state for his omission of that duty, and look to the other contracting party for any breach of the contract.” Bowen v. State (supra) goes further than the other cases in that it states that such an agreement is enforcible against the third party and suggests methods the father can employ to protect himself.
This court looks only to the primary duty and if the respondent feels that he has legal redress against the stepfather and mother, he may seek it in the proper tribunal.
The respondent has cited the case of Middleworth v. Ordway (191 N. Y. 404) which he urges holds that an agreement to adopt between the parties is not against public policy and that such an agreement is enforcible as a defense against the claim of the foster parents for support of the children when the child has been surrendered to the stepparents, as was done here. The facts in Middleworth v. Ordway (supra); Winne v. Winne (166 N. Y. 263); Gavin v. Aitken (258 N. Y. 595); Miller v. Elliott (266 App. Div. 428) are all along the same lines. The relief sought in all these cases was to obtain a share of the estate of *355 a deceased foster parent for a child who has been surrendered to foster parents by their natural parents under agreements that they would legally adopt it, treat and support it as their own, assume the full duties of a parent, and upon the death of the foster parent the child would enjoy all the rights of a child of a foster parent. In these eases, the child was surrendered, brought up and supported by the foster parents, the foster parents assumed the full duties of a parent, the child spent most of his life with them, the foster parents, but no formal adoption proceedings were completed, so that the child was never legally adopted. However, the court in each of these cases held that since the child and its parent or parents had fully performed its part of the agreement that the agreement could be enforced and, accordingly, the child was entitled to his share of the estate of the foster parent or parents. However, the court did not hold that the natural parents had been relieved of their duty to support as imposed by the statute and common law. That question was not before it. The children involved here may have similar rights against their stepfather, “ Thomas Smith ”, but in my opinion this right would not terminate the natural father’s obligation to support.
It is my decision that the respondent is responsible for the support of his two children since he has not been relieved of that support and I find that the agreement to adopt is insufficient to relieve him of this primary duty. Accordingly, the order of $22.50 a week is continued and the matter set down for a hearing on August 2,1964 to fix a permanent order.
In my opinion the welfare of the children will best be served by this result.