OPINION OF THE COURT
Nanette Dembitz, J.
 This child support proceeding concerns a separation agreement that eliminates the father’s weekly obligation for child support when the mother’s income exceeds a specified amount. Such support reduction provision was held invalid in 1977 by a then Judge of this court, who therefore issued a child support order without regard to it. Because of the transition in law and policy from the “primacy of male obligation”[1] to the current legal equality between father and mother, the father’s motion for recon *496 sideration of the 1977 order must be granted, and the support reduction clause must now be held valid.
In their separation agreement executed in 1968, the parties provided for the father’s payment of $77 weekly for support of two children who were to reside with the mother; however, under a specified formula the father would have no support obligation for these two children in any year that the mother’s taxable income exceeded $17,012. The agreement also provided for the father’s support, without qualification, of the parties’ third child, who was handicapped and residing in a foster home. The parties were divorced the day before the agreement was executed by a foreign decree which omitted any reference to support or to the agreement.
In 1977 after several years in which the father failed to pay child support to the mother, in alleged reliance on her increased earnings and the support reduction clause of the agreement, the mother petitioned this court for support on behalf of the two children living with her. Holding the clause invalid, the court issued an order for $120 a week.[2] Thereafter a wage deduction order for this weekly amount plus an amount on arrears was entered against the father, a university professor; such payments from his wages to the mother have continued to date.
I
Movant father, citing Kleila v Kleila (50 NY2d 277), argues that the 1977 support order should be vacated under CPLR 5015, on the ground that the Family Court lacked jurisdiction to modify a separation agreement and that a jurisdictional objection can be raised at any time. However, the court undoubtedly had jurisdiction under sections 411 and 413 of the Family Court Act to entertain the mother’s petition for child support and to determine what, if any, support it should order; its conclusion as to the invalidity of the crucial clause of the separation agreement was ancillary to that determination. For the limited purpose of issuing or denying the support order sought by *497 the mother, the court clearly had jurisdiction to consider the agreement. (See Lacks v Lacks, 41 NY2d 71, 73-77.)
Nevertheless, this court must now part company with the mother’s argument for the continued enforcement of the 1977 order. Despite the inapplicability of CPLR 5015, it is concluded on the grounds explained below that this court should re-examine the validity of the agreement’s support reduction clause.
II
The Family Court is specifically granted the power to reconsider prior orders, in that section 451 of the Family Court Act provides for the court’s “continuing jurisdiction” to “modify, set aside or vacate any order issued in the course of” a support proceeding. See Matter of Pavich v Pavich (24 AD2d 482, 483), reversing the Family Court because of its error in ruling that a “prior order was res judicata and that it ha[s] no revisory power.” Such “revisory power”, however, is generally used, as in Pavich, to adapt a support order to changed financial circumstances, whereas in the instant case the justification for revision of the 1977 order is a change in law and public policy affecting the allocation of child support between father and mother. (Point IV below.)
The mother in effect contends that a vacatur of the 1977 order because of legal developments would offend the doctrine of the law of the case. The question is therefore whether the court’s exercise herein of its section 451 power to vacate prior orders is countermanded by general procedural principles.
III
On the one hand, the mother’s position is supported by rulings that “a determination of a court from which no appeal has been taken ought to remain inviolate” (Matter of Huie [Furman], 20 NY2d 568, 572), and that “[t]he conclusive effect of a final disposition is not to be disturbed by a subsequent change in decisional law.” (Slater v American Min. Spirits Co., 33 NY2d 443, 447.) On the other hand, however, the Court of Appeals suggested an exception to the doctrine of finality when it said that “a subsequent major change in constitutional doctrine should per *498 mit reconsideration of the original claim, at least as to its future effect”. (Matter of Gowan v Tully, 45 NY2d 32, 36-37.) Both of the Gowan grounds for reconsideration are apposite here. For, the legal basis for the 1977 order herein has indeed been undermined by a “major change in constitutional doctrine” (Point IV below), and this case concerns only the “future effect” of the 1977 order.
Further, in its ongoing vitality and repetitive enforceability, a support order shares the characteristics of an equitable decree. Thus, the special power of a court of equity “ To change its decrees’ ” is pertinent. (See People v Scanlon, 11 NY2d 459, 462; also Dutchess Sanitation Serv. v Town of Plattekill, 73 AD2d 300, 302.) Finally, the Court of Appeals has given some indication that present day gender-free principles in regard to family obligations, while not retroactive, should be applied to current enforcement problems. (See Greschler v Greschler, 51 NY2d 368, 377-378.)
For the above reasons it is appropriate for this court to use its revisory power under section 451 of the Family Court Act to consider whether enforcement of the 1977 decision and order accords with present day constitutional doctrine. The interest in finality, which underlies the rules of res judicata and the law of the case, must be balanced against other policies and against the interest in equal justice.[3] To enforce anew every week an order grounded on an outmoded decision that could not now be constitutionally issued would deny to the movant an equality of rights with litigants in current support proceedings. Accordingly, “strict adherence to the law of the case principle in this case would be counterproductive” (see Wilson v McCarthy, 53 AD2d 860, 861); and the rule of finality therefore will not be applied herein.
IV
The 1977 support order relied on a conclusion of law that the paragraph of the separation agreement “relieving the *499 husband of his support obligation with respect to the children ... in the event his former wife’s income exceeds $17,012 per year, is invalid. (Van Dyke v. Van Dyke, 278 App. Div. 446; [Matter of] Smith v. Jones, 43 Misc. 2d 315 [sic]).”[4] The cited decisions — Van Dyke in 1951 and Smith (43 Misc 2d 350) in 1964 — denied effect to separation agreements that eliminated the father’s duty of child support, the courts there emphasizing that the father had a “moral, natural, and statutory duty to support his children” (Van Dyke v Van Dyke, 278 App Div 446, 449), that the father was “absolutely responsible” for child support, and that an “agreement which relieves a father of the support of his child is as equally objectionable as one which relieves him of the support of his wife” (Matter of Smith v Jones, supra, pp 352-353).
Thus, it is clear from the citation of Van Dyke and Smith that the 1977 determination herein was based on the primacy of the paternal obligation for child support. That doctrine, however, has been wholly supplanted by the gender-free principle of legal equality of both spouses with regard to their children and each other — a development in constitutional law and public policy mirroring progress in the social and economic status of women. (Matter of Carter v Carter, 58 AD2d 438, 447; Matter of Goldberg v Aylward, 72 AD2d 510; Orr v Orr, 440 US 268, 279-283; Greschler v Greschler, 51 NY2d 368, supra; Carole K v Arnold K, 85 Misc 2d 643, 644-645.) The antiquated nature of the Smith decision is dramatized by its reference, as if to a sacred principle, to the invalidity of a wife’s waiver of support. The sacrosanct of one decade becomes the heresy of another: such a waiver has been rendered lawful through the 1980 amendment of the General Obligations Law to eliminate its “gender-based distinction”. (Greschler v Greschler, 51 NY2d 368, 378, supra.)
The leading case of Matter of Boden v Boden (42 NY2d 210) crystallized the gender-neutral principle as well as the significance of separation agreements in the formulation of child support orders. The court held (p 213) that it *500 is: “to be presumed that in the negotiation of the terms of the agreement the parties arrived at what they felt was a fair and equitable division of the financial burden to be assumed in the rearing of the child *** Absent a showing of an unanticipated and unreasonable change in circumstances, the support provisions of the agreement should not be disturbed”. While Boden was decided approximately one month before the issuance of the 1977 order herein, that decision — which has by now been followed so often that citations would be superfluous — was then so recent that it obviously failed to come to the Family Court’s attention.
Under Boden and the other gender-neutral holdings cited above, it is in this court’s opinion clear that an agreement relieving a father of any or all child support is equally valid with an agreement relieving a mother of financial obligation for her children. It is of course true that “the Family Court is not constrained by the terms of the separation agreement” if it fails to insure “that the child be adequately provided for” or “there has been an unforeseen change in circumstances and a concomitant showing of need” or “the agreement was not fair and equitable when entered into”. (Matter of Boden v Boden, supra, pp 212-213.) However, these rules apply unisexually, and do not countenance the 1977 decision herein as to the per se invalidity of a provision relieving a father of his child support obligation.
In sum (1) reconsideration of the 1977 order for the purpose of its future enforcement is sustained by procedural principles and by the goal of equal justice; (2) the 1977 order was based on doctrine which is now outmoded because of constitutional, basic changes in the legal treatment of the sexes; and (3) the mother’s agreement to relieve the father of his duty of child support concomitant with an increase in her income is facially and per se valid. The father’s motion is granted, with actual vacatur of the wage deduction order to await further court proceedings respecting the conditions enumerated in Boden for disregard of the support provisions of a separation agreement.

. Orr v Orr, 440 US 268, 283.

. The court made no order respecting the third child, finding that respondent had been paying $300 a month for her care since the date of the agreement.

. See Corporation De Mercadeo Agricola v Mellon Bank, Int., 608 F2d 43, 48; Martin v City of Cohoes, 37 NY2d 162,165; LeRoy v. Sabena Belgian World Airlines, 344 F2d 266, 274, cert den 382 US 878; Chabot v National Securities & Research Corp., 290 F2d 657, 659; People v Wright, 104 Misc 2d 911, 914.

. Implicit in the conclusions of law was the premise that a support order should give due regard to valid support provisions of a separation agreement.