**373 A.2d 799.**

IN RE ADOPTION OF L. AND G.

MAY 24, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. These petitions for the adoption of two minor children without the consent of the respondent (Leonard), their natural father, were brought by Barbara and Glen, natural mother and stepfather of the children. The petitions were granted, and Leonard appealed. He claims that the trial justice erred by (1) failing to appoint a guaridan ad litem for the children, (2) granting the adoption on the grounds of failure to support where the divorce decree had left the support question open, and (3) neglecting to make a finding that Leonard had an opportunity to provide support. We conclude that the trial justice committed no error.

Barbara and Leonard were married on July 4, 1967, and in the following years two children were born. Sometime thereafter Barbara sued for divorce, and, since Leonard's whereabouts were unknown, notice was effected by publication. On April 13, 1973, a final decree was entered,

granting the divorce, and Barbara was awarded custody of the children. The question of support was left open as is proper where the party on whom support might be charged is not before the court.

Barbara and Glen were married on May 19, 1973, and on October 24 of that year they filed these petitions for adoption. Due notice of the pendency of these petitions was given by publication, and Leonard appeared at the adoption hearing to protest. Barbara and Glen charged that Leonard's consent to the grant of their petitions was unnecessary because he "neglected to provide proper care and maintenance for the child[ren] for one (1) year next preceding the time of the filing of the petition * * *." General Laws 1956 (1969 Reenactment) §15-7-7. The trial justice agreed, concluding that although Leonard was financially able to provide support, it was only upon learning of the impending adoption and receiving legal advice that he tendered any payment.

On appeal Leonard concedes that §15-7-7 does not require the appointment of a guardian ad litem for the children. He contends, however, that in all contested adoption proceedings a guardian should be appointed because the interests of the adopting parties are not necessarily synonymous with the best interests of the child. We are sure that the trial justices of the Family Court are well aware of, and prepared to carry out, their duty to protect the child's best interest. Thus, while some may deem it desirable to have children in contested adoption cases always represented by a guardian or attorney, the Legislature in its wisdom has determined otherwise, leaving the question of a guardian to the discretion of the court. It is not our province, nor are we prepared, to rewrite the legislation. As Leonard has not alleged that the trial justice abused his discretion, we will not pursue this question further.

Leonard claims that because support was left open in the divorce decree, he had no duty to support the children; *ergo* he was not derelict. This argument is premised on *Brown* v. *Smith,* 19 R.I. 319, 33 A. 466 (1895), where this court reasoned that a father's common law obligation to support children went hand in hand with his right to receive their services and earnings. Where a father's right was abrogated by giving custody to the mother, his obligation could no longer exist "otherwise than in pursuance of some statutory regulation." *Brown* v. *Smith, supra* at 321. This court also concluded that whatever is decreed in a divorce proceeding is final absent modification or annulment. The argument before us today is that Leonard lost his right to the children's services and earnings; the court entered no order to support;[1] and without modification of the divorce decree he had no duty to support. Unfortunately, our predecessors' view of the common law in 1895 has turned out to be uncommon.

We decide today, therefore, to join the mainstream of judicial opinion, *see* Annot., 69 A.L.R.2d 203 (1960), and hold that a father's duty to support is not relieved by awarding the mother custody absent an order relieving him of support. That is to say that where support is left open, either by choice or necessity, the father's duty to support continues. Thus, there was no need for Barbara to seek modification of the earlier divorce decree when Leonard appeared on the scene.

We come now to Leonard's contention that the trial justice failed to make a finding on the question of whether there was "opportunity" to support. The trial justice in fact found that during the statutory period Leonard was financially able to provide and never denied that ability.

---

[1] Leonard passes over the fact that no support order could have been entered in the divorce decree, since he absented himself from the proceedings.

Indeed, he testified that he was earning $78 per week take-home pay and that he had made support payments in cash and by bank drafts. The trial justice found, however, that despite Leonard's financial ability during the statutory period, he never made any effort to meet his obligations, and that when the gesture finally came, it "was a question of too little too late."

Leonard's argument that the trial justice should have made an explicit finding on the question of "opportunity" is based on *In re LaPorte*, 103 R.I. 232, 237-38, 236 A.2d 264, 267 (1967), where we said that a necessary implication of §15-7-7 is that "there will be a forfeiture of the parental right to withhold consent to an adoption only when it is shown that such neglect occurred while the offending parent had the ability and the opportunity to discharge the duty to provide support." We then remanded the case for a hearing on and determination of ability and opportunity to provide.

In the instant case Leonard seems to contend that because the divorce decree enjoined and restrained him from "molesting or interfering" with his wife "in the home, on the street or elsewhere," he was without opportunity to make payments, or at least that the trial justice should have made a finding on the point. It goes without saying that an injunction against interfering with one's former spouse is hardly a loophole through which the nimble may climb to escape support payments. But we must nonetheless determine whether an explicit finding as to "opportunity" was required here.

The *LaPorte* language appears to have been drawn from *Blatchford* v. *Blatchford*, 67 R.I. 24, 28, 20 A.2d 539, 541 (1941).[2] There this court addressed the question of a respondent's ability to provide and ruled that "[t]he re-

---

[2] *In re LaPorte*, 103 R.I. 232, 238 n.1, 236 A.2d 264, 267 n.1 (1967).

spondent must not only have the physical capacity to earn but he must also have the opportunity to apply such capacity." "Opportunity," therefore, is not access to one's spouse, or the chance to make a payment, but the availability of a job which a respondent is physically capable of performing. The *LaPorte* language is no differet; one who has the ability (capacity) as well as the opportunity to support is financially able to do so.

Here the trial justice found Leonard "financially able" to support, and this finding is supported by Leonard's testimony concerning employment. We see no reason for the trial justice to make specific findings on physical capacity and opportunity to work when Leonard never contested either, but readily avowed his financial ability.

The respondent's apeal is denied and dismissed, the decree appealed from is affirmed, and the case is remanded to the Family Court.

*Benedetto A. Cerilli, Sr.,* for petitioners.

*Selya and Iannuccillo, Anthony G. Iannuccillo,* for respondent.