## STATE

### v.

### Gerard T. OUIMETTE.

### No. 77–316–C.A.

Supreme Court of Rhode Island.

June 20, 1980.

Dennis J. Roberts, II, Atty. Gen., Stephen Lichatin, III, Sp. Asst. Atty. Gen., Chief, App. Division, for plaintiff.

Peter A. DiBiase, Providence, for defendant.

## OPINION

DORIS, Justice.

This is an appeal by the state from a decision of the Superior Court to sustain the defendant's, Gerard Ouimette's, motion to dismiss a charge of perjury, a violation of G.L.1956 (1969 Reenactment) § 11–33–1.

This case evolves from an October 1975 incident at the Adult Correctional Institutions (A.C.I.) in which two prison inmates, Pasco Meo and Charles Fenner were assaulted. Ouimette and three other prison inmates, Ralph DeMasi, Ronald Sweet, and Richard Gomes were charged with these assaults.

Following plea negotiations, Ouimette entered nolo contendere pleas which were accepted by the Superior Court. Subsequently, the state called Ouimette as a witness in the trial of one of his co-defendants, Ralph DeMasi. As a result of his testimony at this trial, the state charged Ouimette with eight counts of perjury. (Information No. P 2/77–550). Pursuant to Super. R. Crim. P. 9.1,[1] Ouimette filed a motion to dismiss these perjury charges. The Superior Court

---

1. Rule 9.1 of Super. R. Crim. P. provides as follows:

   "A defendant who has been charged by information may, within ten (10) days after he has been served with a copy of the information, move to dismiss on the ground that the information and exhibits appended thereto do not demonstrate the existence of probable cause to believe that the offense charged has been committed or that the defendant committed it. The motion shall be scheduled to be heard within a reasonable time."

sustained this motion to dismiss on all eight counts of perjury.

The state is now appealing the trial justice's dismissal of count 8 of the perjury charges. Count 8 specifically alleges that Ouimette testified falsely at Ralph DeMasi's trial to a series of six questions wherein he denied having a conversation with Julio Costa. The state contends that the trial justice sustained the motion to dismiss on the basis of "technicalities" rather than on the basis of a failure to demonstrate probable cause as required by Super. R. Crim. P. 9.1, and G.L.1956 (1969 Reenactment) § 12–12–1.7 as enacted by P.L.1974, ch. 118, § 11.

The first priority in the examination of this appeal is the establishment of the standard of review to be applied. This standard of review is succinctly delineated in *Wolf v. Wolf*, 114 R.I. 375, 333 A.2d 138 (1975):

"In reviewing the decision of the justice below, where he is passing on a *motion to dismiss*, we merely determined whether his findings are supported by the evidence or whether in making such findings he misconceived or overlooked material evidence. His findings are entitled to great weight and will not be set aside unless they are clearly erroneous or fail to do justice between the parties. *Krawcyzk v. Krawcyzk*, 81 R.I. 335, 102 A.2d 870 (1954)." (Emphasis added) *Id.* at 376, 333 A.2d at 139.

A review of the record does not indicate that the trial justice was clearly erroneous in finding that there was no probable cause that Ouimette committed perjury as detailed in count 8. Count 8 is based on the disparity between Ouimette's testimony at Ralph DeMasi's trial [2] and a statement from Correctional Officer Julio Costa [3] obtained during the police investigation of the assault incident. Specifically, Julio Costa's statement indicates that while Costa was entering the "caged area" of the A.C.I. and Ronald Sweet was beating Pasco Meo, Ouimette shouted at him "Don't come in here." In response to questions, Ouimette denied

2. Pertinent parts of Gerard Ouimette's testimony at Ralph DeMasi's trial:

"Q During the course of the incident that you've described as occurring in this area of the flats in South State, after you went around that corner and observed Ralph DeMasi go down, Sweet beat Pasco Meo with the baseball bat, did you have occasion to have any conversation with anybody?
"A No, I did not.
"Q Not at all?
"A None whatsoever.
"Q Did you direct any comments at all to members of the correctional officer's staff or superior officers?
"A At that time?
"Q Yes.
"A No, I didn't.
"Q Did you at any time tell anybody not to come into the wing area?
"A No, I didn't.
"Q Did you ever have any conversation with Captain Julio Costa?
"A No, I didn't. And Mr. Murphy, I'll take a lie detector test. I already offered that in front of Judge MacKenzie."

3. Pertinent parts of Julio Costa's statement:
"Q Would you tell in your own words what you were doing on or about 3:00 p. m.?
"A I had just concluded with a classification board, which was held in Deputy Brule's office. I entered the rear hall and I was advised by Lt. Jencks that something was happening in the south state wing. I went to the south state door and looked through the sliding window in the door. And I saw a crowd in that area, near the rear hall door. There was a lot of noise and I asked the officer to open the door, so that I could enter the south wing. He opened the door and I entered the caged area. I saw Gerard Ouimette, an inmate, as I entered the cage area. He shouted to me, don't come in here. I reached for the door for the cage that leads to the south wing, and it was locked. The Deputy entered the cage behind me. We shouted to Ronnie Sweet, Gerard Ouimette and Richard Gomes, what's going on. Ronnie Sweet was beating on Pasco Meo, an inmate, with a board. Ronnie Sweet dropped the board and walked away, then Richard Gomes, an inmate, began to beat on Pasco Meo and it appeared to me he was beating him with a pipe. Then he left the area, and we were let out of the cage and we proceeded to go to Pasco Meo.
"Q What did you see upon reaching inmate Pasco Meo?
"A He was lying down, his face was covered with blood. Several officers picked him up and carried him into the hospital.
"Q What was inmate Gerard Ouimette doing while you were watching from the cage?
"A He was just shouting, I did not notice him as much because I was watching Sweet and Gomes."

(1) having a "conversation" with anybody, and specifically with Julio Costa, (2) directing any comments to a correctional officer after Ronald Sweet beat Pasco Meo, and (3) telling "anybody" not to come into the "wing area."

In comparing the details of Costa's statement and Ouimette's precise responses to the questions put to him, the trial justice concluded there was no perjurious disparity. He found that the alleged shout "Don't come in here" did not constitute a "conversation." Thus, when Ouimette was asked if he had a "conversation" with anybody or with Julio Costa, it was not perjurious to respond "No."

Further, the trial justice concurred with defendant's argument that there is a distinction between the "caged area" and the "wing area" at the A.C.I. Thus, since Costa stated that Ouimette allegedly shouted "Don't come in here" as Costa was entering the *caged area*, it was not perjurious for Ouimette to respond that he at no time told anyone not to come into the *wing area.*

▮ The state argues that these findings by the trial justice negating Ouimette's alleged perjury are "mere technicalities" and as such are not a proper basis for sustaining a motion to dismiss. Although the trial justice also refers to his findings regarding count 8 as "technicalities," such references are clearly appropriate when dealing with a perjury charge. In *Bronston v. United States*,[4] 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), the Court makes it clear that a defendant's responses to questions, if literally true even though perhaps shrewdly misleading are not perjurious,

"The cases support petitioner's position that the perjury statute is not to be loosely construed, nor the statute invoked simply because a wily witness succeeds in derailing the questioner—so long as the witness speaks the literal truth. It may

well be that petitioner's answers were not guileless but were shrewdly calculated to evade. Nevertheless, we are constrained to agree with Judge Lumbard, * * * that any special problems arising from the literally true but unresponsive answer are to be remedied through the 'questioner's acuity' and not by a federal perjury prosecution." *Id.* at 360–62, 93 S.Ct. at 601–02, 34 L.Ed.2d at 575–76.

Thus, it is clearly necessary to examine Ouimette's testimony with minute particularity to assess whether his responses to the questions regarding the alleged shout were literally true, albeit perhaps misleading. The trial justice correctly performed this function and concluded that Ouimette's responses were not perjurious.

Finally, it is the duty of the trial justice to assess from *all* the evidence before him whether there was probable cause to believe the defendant *willfully* perjured himself.[5] The transcript of Ouimette's plea-bargaining session was entered into evidence at the hearing on the motion to dismiss. This transcript indicates that Ouimette candidly admitted to the court that he did encourage his friends to assault Pasco Meo and Charles Fenner and that he watched as they beat them up. Thus, the trial justice could consider this information in assessing whether Ouimette would have any motivation to lie *willfully* regarding a conversation with a correctional officer. In light of his previous admissions, it is certainly reasonable to conclude that Ouimette had no impetus to perjure himself willfully.

The state's appeal is denied and dismissed, the decision to sustain the motion to dismiss is affirmed and the case is remanded to the Superior Court for further proceedings.

BEVILACQUA, C. J., did not participate.

---

4. *Bronston v. United States*, 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973) is cited as controlling in *United States v. Vesaas*, 586 F.2d 101, 104 (8th Cir. 1978) and *United States v. Laikin*, 583 F.2d 968, 970 (7th Cir. 1978).

5. General Laws 1956 (1969 Reenactment) § 11–33–1 states in pertinent part:

"Every person of whom an oath or affirmation is or shall be required by law, who shall wilfully swear or affirm falsely * * *, shall be deemed guilty of perjury."