STATE

v.

David FRITZ.

No. 2001–369–C.A.

Supreme Court of Rhode Island.

June 12, 2002.

Aaron L. Wesiman, for Plaintiff.

Thomas L Mirza, Rumford, for Defendant.

Present WILLIAMS, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

LEDERBERG, J.

The State of Rhode Island (state) has appealed a Family Court judgment that dismissed a criminal information entered against the defendant, David Fritz, for non-payment of child support. The state argued that the justice erred in ruling that the defendant's voluntary termination of his parental rights ended his responsibility for child support payments. It is our opinion that the termination of parental rights does not *ipso facto* extinguish a parent's child support obligations. Therefore, we sustain the state's appeal with respect to the Family Court's interpretation of the statutes on termination of child support. In addition, we vacate the dismissal of the criminal information and remand for further proceedings on whether the defendant willfully withheld child support in violation of a criminal statute and whether he was selectively prosecuted for the alleged violation.

### Facts and Procedural History

The defendant fathered two children while married to Lorraine Fritz (Lorraine). In their final judgment of divorce entered in January 1994, Lorraine was awarded sole custody of the children, and defendant was ordered to pay $147.50 per week in child support. At that point, defendant owed an arrearage of $1,800 in child support. Lorraine obtained medical coverage for the children through Aid to Families with Dependent Children (AFDC). The defendant's parental rights to his two children were terminated by the Family Court with defendant's consent on November 25, 1994, in accordance with a petition that had been filed by the Rhode Island Department of Children, Youth and Families (DCYF).[1] Although the children remained in the custody of their mother, the Family Court appointed DCYF as guardian of the children "for all purposes as to [defendant's] rights."

Because the original child support order never was vacated, the Rhode Island office of Child Support Enforcement (CSE), a subdivision of the Department of Administration's Division of Taxation, never received notice of the termination of defendant's parental rights and continued to assess the same weekly child support sums against defendant. At the time of the parental rights termination, defendant had accrued, depending on the calculation, either $7,660 or $9,303 in child support arrearage, and in December 1994, a body attachment was issued after defendant failed to appear for a hearing on CSE's

---

1. The Family Court justice treated the termination hearing as one for the termination of defendant's right to consent to the children's adoption under G.L.1956 § 15–7–6. Section 15–7–6 addresses the termination of a parent's right to consent to adoption and provides that the petitioning child placement agency shall be appointed guardian of the child "for all purposes." Although the Family Court cited this statute in its bench decision, the state referred to § 15–7–6 as the "voluntary-parental-termination-rights" statute, and both parties took the position that the judgment resulted in the termination of defendant's parental rights. We believe that the parties misinterpreted § 15–7–6, which is more limited in scope than is the termination of parental rights statute, § 15–7–7. That error, however, does not affect our opinion here, which is equally applicable to both provisions, as well as to § 15–7–5, which sets forth several circumstances under which a parent's consent to the adoption of a child is not required.

contempt motion for outstanding child support.

In 1997, CSE forwarded defendant's name to the office of the Attorney General, along with the names of approximately 1,235 others alleged to have outstanding body attachments and arrearages of more than $30,000, in violation of G.L.1956 § 11–2–1.1. A felony complaint was issued against defendant in December 1997, but it was not filed in the Family Court until May 25, 2000, on which date defendant was arrested.

The state filed an information against defendant in August 2000 on the ground that he had accrued a child support arrearage of more than $75,000, thereby violating the provisions of § 11–2–1.1. The defendant was incarcerated on these charges from May 25, 2000, until October 5, 2000, when he was released on personal recognizance in the amount of $10,000 pending verification that his parental rights had been terminated. Although he was held on felony charges, it appears that he was denied the assistance of counsel during most of this period of incarceration.[2]

The defendant filed a motion to dismiss the information, claiming that his obligation to pay child support ended once his parental rights had been terminated, and he asserted that on the date that his parental rights were terminated, his arrearage totaled no more than $9,303 by the state's highest estimate. The Family Court justice dismissed the information and ruled that defendant's arrearage could not accrue beyond the date of termination of parental rights. Under the justice's calculation of arrearage, the state had failed to present a *prima facie* criminal complaint for failure to pay child support pursuant to § 11–2–1.1. The state appealed.

## Standard of Review

In evaluating the trial justice's finding that defendant's parental support payments were discharged pursuant to statutory authority, we turn to the relevant provisions of the General Laws. As the final arbiter on issues of statutory construction, this Court reviews *de novo* questions of statutory interpretation. *Rhode Island Depositors Economic Protection Corp. v. Bowen Court Associates,* 763 A.2d 1005, 1007 (R.I.2001) (citing *City of East Providence v. Public Utilities Commission,* 566 A.2d 1305, 1307 (R.I. 1989)); *State v. Powers,* 644 A.2d 828, 830 (R.I.1994). In so doing, we adopt the plain meaning of the language in a legislative enactment. *Powers,* 644 A.2d at 830. If we discern a statutory ambiguity, this Court establishes and effectuates the legislative intent behind the enactment. *Id.*

When addressing a motion to dismiss a criminal information, a Family Court justice is required to examine the information and any attached exhibits to determine whether the state has satisfied its burden to establish probable cause to believe that the offense charged was committed and that the defendant committed it. *State v. Aponte,* 649 A.2d 219, 222 (R.I.1994) (per curiam); *see* G.L.1956 § 12–12–1.7;[3] Super.R.Crim.P. 9.1.[4]

---

**2.** The defendant has not challenged this presumed violation of his Sixth Amendment rights, *see Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *State v. Holliday,* 109 R.I. 93, 100–01, 280 A.2d 333, 337 (1971), and we therefore do not address the issue on appeal.

**3.** General Laws 1956 § 12–12–1.7 sets forth the procedure by which and the grounds on which a defendant may move to dismiss a criminal information.

**4.** Rule 9.1 of the Superior Court Rules of Criminal Procedure essentially duplicates the

█ This Court reviews a decision to grant a criminal defendant's motion to dismiss by examining whether the justice's findings are supported by the evidence or whether, in making those findings, the justice misconceived or overlooked material evidence. *State v. Ouimette*, 415 A.2d 1052, 1053 (R.I.1980) (citing *Wolf v. Wolf*, 114 R.I. 375, 376, 333 A.2d 138, 139 (1975)). We allot great weight to the justice's findings and will not set them aside unless those findings are clearly erroneous or fail to achieve justice between the parties. *Id.*

## Post–Termination Support Obligations

The criminal statute under which defendant was charged, § 11–2–1.1(b)(1), provides:

"Every person who is obligated to pay child support pursuant to an order or decree established by or registered with the family court pursuant to chapter 11.1 of title 15, who has incurred arrearage of past-due child support in the amount of thirty thousand dollars ($30,000), and having the means to do so, who *willfully fails* to pay one or more installments of child support in an amount previously set by the court, according to the terms previously set by the court, is guilty of a felony for each similar instance of failure to make subsequent payments. Upon conviction that person shall be punished by imprisonment for no more than five (5) years." (Emphasis added.)

█ Whether defendant had incurred an arrearage of more than $30,000, thereby sufficient to invoke the provisions of this criminal statute, depends upon whether his child support obligations continued to accrue after his parental rights were terminated in November 1994. The defendant did not seek relief from the arrearage that accrued before the termination, nor did he ever seek an order terminating his ongoing child support responsibilities. Thus, the issue in this case is whether the termination of defendant's parental rights automatically brought his continuing child support obligations to an end.

In determining that a parent's obligation to support ceases at the point when that person's parental rights have been terminated, the trial justice relied on G.L. § 15–7–7 and G.L.1956 § 15–7.2–2. Section 15–7–7, which is entitled "Termination of parental rights," provides in pertinent part:

"The court shall, upon a petition filed by a governmental child placement agency or licensed child placement agency after notice to the parent and a hearing on the petition, terminate any and all *legal rights* of the parent to the child, including the right to notice of any subsequent adoption proceedings involving the child, if the court finds as a fact by clear and convincing evidence that [any of several enumerated conditions have occurred]." Section 15–7–7(a). (Emphasis added.)[5]

Termination may be granted if "[t]he parent has willfully neglected to provide proper care and maintenance for the child for a period of at least one year where financially able to do so." Section 15–7–7(a)(1).

provisions of § 12–12–1.7. *See Reporter's Notes,* Super.R.Crim.P. 9.1.

**5.** Upon the petition of a natural parent or grandparent, under § 15–7–5(b)(1), parental rights also may be terminated on the same grounds as those set forth in § 15–7–7. The Family Court may also, with the parent's authorization, issue a decree terminating a parent's right to give or withhold consent to a child's adoption and "mak[ing] the agency the guardian of the child for all purposes" pursuant to § 15–7–6. In addition, the Family Court may grant an adoption without parental consent under certain conditions delineated in § 15–7–5(b)(2).

The trial justice also relied on § 15–7.2–2 of the Passive Voluntary Adoption Mutual Consent Registry Act, which is intended to provide a registry in which birth parents, adult adoptees, and surviving relatives thereof may register identifying information for release to each other. Section 15–7.2–2 is entitled "Policy" and provides in pertinent part:

> "It is the policy of this state that *adoption* is based upon the legal termination of parental *rights and responsibilities* of birth parents and the creation of the legal relationship of parents and child between an adoptee and the adoptive parents." (Emphases added.)

In contrast, the termination of parental rights statute, § 15–7–7, is included in the title, Domestic Relations, in the chapter entitled, "Adoption of Children." Significantly, the termination of parental rights statute does not require that a child be placed for adoption.

The purpose of the termination of parental rights under §§ 15–7–5, 15–7–6, and 15–7–7, is "to provide children who are in need with permanent and safe placement," *In re Kyle S.,* 692 A.2d 329, 332 (R.I.1997), and in certain cases, "to allow the state to make the children available for adoption," *In re John,* 605 A.2d 486, 487 (R.I.1992). Here, the children were not adopted, but remained in the custody of their mother. An involuntary termination petition was filed by DCYF to which defendant subsequently consented.

In granting defendant's motion to dismiss the criminal information, the Family Court justice found that by consenting to the termination of his parental rights to his children, defendant also relinquished "all that is encompassed with that responsibility, as well as his right to give or withhold consent to their adoption." He found further that pursuant to § 15–7.2–2, "adoption is based upon the legal termi-

nation of parental rights and responsibilities" and he reasoned that "[i]t necessarily follows that the termination of one's parental rights also terminates one's responsibilities." Specifically, the justice determined that "a parents [*sic*] child support obligation is terminated when his/her parental rights are terminated by a court, provided this Court finds that said termination is voluntary and in the child's best interest."

The defendant repeatedly asserted that he ceased being a parent with attendant obligations at the time his parental rights were terminated. The state, on the other hand, argued that under § 15–7–7(a), only parental rights are terminated, not parental obligations. If a subsequent adoption occurs, then child support obligations can be terminated. The plain language of § 15–7–7(a) states that "[t]he court shall, upon a petition filed by a governmental child placement agency * * * terminate any and all legal *rights* of the parent to the child." (Emphasis added.) In contrast, § 15–7.2–2 states that "[i]t is the policy of this state that adoption is based upon the legal termination of parental *rights and responsibilities* of birth parents." (Emphasis added.) The state argued that if the Legislature had intended that the voluntary termination of parental rights would terminate both a parent's rights *and responsibilities,* it would have so stated in § 15–7–7(a), as it had done explicitly in § 15–7.2–2. We concur with this analysis.

The defendant contended that basing the financial responsibilities of a parent upon the adoptive status of the children to whom the parent's rights have been terminated is unsound because § 15–7–7 expressly forecloses a parent's right to notice of adoption proceedings. The defendant, however, has failed to take into account that the costs of supporting a child who has been adopted will be assumed by the adoptive parent(s). Absent an adoption,

terminating support from one parent necessarily places the full financial responsibility on the other parent, often with assistance from the state. In this case, a child support guideline worksheet filed at the time of Lorraine's divorce from defendant indicated that the mother's gross income was "0," and AFDC provided medical coverage for the children.

 A parent, we believe, should not be permitted to avoid or evade child support obligations by voluntarily terminating parental rights, especially when, as in this case, no adoption is contemplated. Moreover, no adoption is required by § 15–7–7 in order to effectuate a termination of parental rights. Although some courts, absent a specific statutory provision or statutory ambiguity, have held that termination of parental rights ends financial obligations as well, it is our opinion that under current Rhode Island statutes, parental financial support continues until a child has been emancipated, adopted, reaches the age of majority, or until the obligation has been duly terminated after the Family Court has held a hearing and issued an order stating its findings.

In some jurisdictions, the term "parental rights" has been interpreted as incorporating all the rights of the parental relationship, including not·only those rights that flow to the parent, but also those, such as the right to financial support, that flow to the child. *See, e.g., County of Ventura v. Gonzales,* 88 Cal.App.4th 1120, 106 Cal. Rptr.2d 461, 464 (2001) (citing *State Welfare Division, Department of Human Resources v. Vine,* 99 Nev. 278, 662 P.2d 295, 298 (1983)). The plain language of Rhode Island's termination of parental rights statute, § 15–7–7, addresses only the "legal rights of the parent to the child" and not the reciprocal rights of the child with respect to the parent. Because this Court consistently has declined " '[to] interpret a statute to include a matter omitted unless the clear purpose of the legislation would fail without the implication,' " *Wehr, Inc. v. Truex,* 700 A.2d 1085, 1088 (R.I.1997) (per curiam) (quoting *State v. Feng,* 421 A.2d 1258, 1264 (R.I.1980)), we interpret the General Assembly's silence as an indication that it did not intend that § 15–7–7 terminate the right of the child to support by the parents.[6]

 In Rhode Island, even a non-custodial parent has a common-law duty to support his or her child. *In re Adoption of L. and G.,* 118 R.I. 316, 319, 373 A.2d 799, 800 (1977). Moreover, we agree that "a parent cannot waive or contract away the child's right to support." *Runner v. Howell,* 205 W.Va. 359, 518 S.E.2d 363, 366 (1999) (per curiam) (quoting *Wyatt v. Wyatt,* 185 W.Va. 472, 408 S.E.2d 51, 54 (1991)); *see also Culpepper v. Brewer,* 242 Ga. 210, 248 S.E.2d 619, 621 (1978) ("A father cannot void his primary responsibility to support his children by contracting with a third party to assume this responsibility. The right to child support belongs to the child."); *Matter of Harvey Cook v. Neill,* 118 A.D.2d 109, 504 N.Y.S.2d 434, 436 (1986) ("A father cannot contract away his duty to support his child with either the mother or a third person.") (quoting *Matter of Smith v. Jones,* 43 Misc.2d 350, 250 N.Y.S.2d 955, 958 (N.Y.Fam.Ct.1964)); *Hobus v. Hobus,* 540 N.W.2d 158, 161 (N.D.1995) ("Parents may not voluntarily terminate their rights in a child to avoid

---

**6.** Section 15–7–5(b)(1), incorporates the grounds for termination set forth in § 15–7–7. Therefore, that section also terminates only a parent's rights to a child. Moreover, because §§ 15–7–5(b)(2) and 15–7–6 address a parent's ability to give or withhold consent to a child's adoption, those provisions also do not alter a child's right of support before the child is adopted.

support payments."). In short, we agree with the gravamen of CSE's argument that "a voluntary termination [of parental rights] or agreement not to visit with the child" cannot be the basis for a suspension or termination of child support. "If this were the law, the non-custodial parents would line up to 'voluntarily' terminate rights simply to avoid paying child support."

■ The principle that a child's right to receive support survives a change in parental rights is evidenced by § 15–7–17, titled, "Rights of natural parents terminated-Inheritance by child from natural parents," in which the General Assembly directed that all a parent's financial obligations to his or her child are not eliminated, even by adoption of the child:

"[T]he granting of the petition for adoption will not deprive an adopted child of the right to inherit from and through his or her natural parents in the same manner as all other natural children." Section 15–7–17.

■ It is apparent to us, therefore, that a child's ongoing rights to financial support constitute an independent interest that must be represented at a hearing to be held before child support is terminated by the Family Court. This Court has recognized such an independent interest of a child at an adoption hearing in *In re Christina D.*, 525 A.2d 1306 (R.I.1987) (per curiam), by pointing out:

"It is inconceivable that the guardian ad litem, appointed to represent the child's interests, would be denied the opportunity to convey those interests to the trial justice in a proceeding in which the ultimate focus is the best interests of the child." *Id.* at 1308.

Although the objective in an adoption proceeding differs from that in a termination of parental rights or child support hearing, the sound principles underlying the hold-

ing of *In re Christina D.* would be violated if a child's continuing rights to financial support automatically were terminated without giving the child's representative an opportunity to address the court on the issue of support.

We agree with the dissent that § 15–7–7, a statute derogating common law parental rights, must be strictly construed. And, as our colleague points out, the statute clearly provides for the termination of "any and all legal *rights* of the parent to the child." (Emphasis added.) In our opinion, strict construction of the statute authorizes the termination of parental rights, but not parental responsibilities.

Our holding in this case relies on decisions of this Court that have treated parental rights distinctly from parental responsibilities. For example, in *In re Jessica S.*, 643 A.2d 794 (R.I.1994) (per curiam), we held that a biological father was not entitled to receive foster-care support after his rights to his two children had been terminated in Texas for his failure to pay child support, and the father later undertook to care for the children as a foster parent. *Id.* at 794–95. We thus recognized that the termination of parental rights did not necessarily sever a parent's financial ties to his or her children. We also held that a non-biological father, who had been married to the child's mother during the child's first four years, should be responsible for child support after he divorced the child's mother, even though he "had no intention of reestablishing contact and providing the child with further love and affection" and had sought an order terminating his parental rights and obligations with respect to the child. *Pietros v. Pietros*, 638 A.2d 545, 546, 547–48 (R.I.1994). There again, we treated a putative parent's financial obligations as distinct from his parental rights. Con-

versely, this Court has held that the mere failure to pay child support is not, in itself, cause for termination of parental rights under § 15–7–7(a)(1). *In re Oscar C.*, 598 A.2d 1093, 1096 (R.I.1991).

▮ Moreover, our position that the termination of parental rights does not trigger the automatic termination of a parent's financial obligations is consistent with the child support statute, G.L.1956 § 15–5–16.2, and the cases that have interpreted it. Section 15–5–16.2(c) calls for ongoing Family Court oversight with respect to child support orders. A parent wishing to alter his or her support obligations must affirmatively assert a motion to amend the order for support and prove changed circumstances; otherwise, the original order continues to run. *Healey v. Healey*, 591 A.2d 1216, 1218 (R.I.1991) (per curiam); *see also Calcagno v. Calcagno*, 120 R.I. 723, 729, 391 A.2d 79, 82 (1978) (holding that a child support order "is not self-terminating but is valid and effective until amended or terminated by an order of the court," even when some of the children have become emancipated or have reached the age of majority). In the case at bar, defendant conceded at the Family Court hearing on his motion to dismiss the criminal information that a separate motion to suspend child support may be required, but defendant never submitted one.

▮ In light of these considerations, and in the absence of any specific procedural directive from the Legislature, we are of the opinion that the following protocol will best effectuate the statutory scheme by which the rights and responsibilities of parents and children are governed. Before parental child support obligations may be terminated along with parental rights, the Family Court must make findings on child support that must be included in an order or decision. At the hearing, the interests of the child also

must be represented, for example, by a guardian ad litem or by the state, if the child is in the care and custody of the state. Such representation on behalf of the child is consistent with our holding in *In re Christina D.*, 525 A.2d at 1308, where a guardian ad litem participated in an adoption proceeding on behalf of the child.

### Motion to Dismiss the Information

The state also argued that because the Family Court justice committed an error of law in finding that defendant's child support obligations ceased automatically upon the termination of his parental rights, the judgment dismissing the criminal information should be vacated, and the criminal information should be reinstated. In assessing the motion to dismiss, the Family Court justice was required to determine whether "the information and exhibits appended to it * * * demonstrate[d] the existence of probable cause to believe that the offense charged ha[d] been committed [and] that the defendant committed it." Section 12–12–1.7; Super.R.Crim.P. 9.1.

▮ In this case, the criminal information charged defendant with violating § 11–2–1.1(b)(1), which provides that every person who is under court order to pay child support, "who has incurred arrearage of past-due child support in the amount of thirty thousand dollars ($30,000), and having the means to do so, who willfully fails to pay one or more installments of child support * * * is guilty of a felony." Here, the Family Court justice found that "[a]t the time of the defendant's voluntary relinquishment of his parental rights, his outstanding child support arrearage was Nine Thousand Three Hundred and Three ($9,303.00) dollars." Because the justice determined that defendant's child support obligations ended when his parental rights

were terminated in November 1994, the justice concluded that "the Attorney General has failed to satisfy this court in establishing a prima facie case under R.I. Gen. Laws § 11–2–1.1," but the court made no findings on the remaining elements of the statute.

Given our determination that defendant's child support obligations remained, notwithstanding the termination of his parental rights, it appears from the record that defendant's arrearage exceeded the statutory threshold of $30,000 at the time the Family Court dismissed the information. We therefore vacate the dismissal of the criminal information and remand this case to the Family Court for a hearing to determine, *inter alia*, whether the information and any attached exhibits demonstrated probable cause to believe that defendant, "having the means to do so," "willfully fail[ed]" to make the court-ordered child support payments. Section 11–2–1.1(b)(1).

 In their briefs to this Court, both the defendant and the American Civil Liberties Union (ACLU), as *amicus curiae*, noted that CSE has, in the past, discontinued child support arrearage and/or obligations upon termination of parental rights. The defendant and the ACLU contended that holding the defendant liable for support in this case, in light of CSE's past practice, would violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. The defendant also claimed that because of this practice, he "could not possibly know or reasonably believe that his cessation of support payments after his parental rights were terminated was a crime." To support his position, the defendant cited *State v. Fonseca*, 670 A.2d 1237 (R.I.1996), in which this Court set forth the standard for determining whether a criminal statute is unconstitutionally vague:

"The standard employed to gauge whether a particular statutory term reasonably informs an individual of the criminality of his conduct is whether the disputed verbiage provides adequate warning to a person of ordinary intelligence that his conduct is illegal by common understanding and practice." *Id.* at 1239 (quoting *State v. Authelet*, 120 R.I. 42, 45, 385 A.2d 642, 644 (1978)).

Having rested his decision on a determination that a termination of parental rights under chapter 7 of title 15 automatically terminated the defendant's support obligations, the Family Court justice did not reach these issues. Because these questions involve inherently factual matters, we remand the case to the Family Court for a hearing to ascertain whether the action against the defendant represented a selective prosecution of his alleged violation of § 11–2–1.1(b)(1).

## Conclusion

It is our opinion that automatically cutting off financial support to a child at the time parental rights to the child are terminated ignores the plain language and intent of our statutes. We recognize that many parents whose rights in their children are terminated have no capacity to provide financial support, and their children may be in the care and custody of the state. Such circumstances can be considered during a hearing at which the rights of the child shall be represented. The hearing may or may not be part of a parental rights termination proceeding. Therefore, in this case, the state's appeal is sustained insofar as we reverse the Family Court judgment finding that child support obligations automatically ceased as of the date the defendant's parental rights were terminated. We also vacate the dismissal of the criminal information and remand the case to the Family Court

for a hearing on whether the criminal information and the attached exhibits demonstrated probable cause to believe that the defendant willfully withheld support in violation of § 11–2–1.1(b)(1) and whether the defendant was unfairly selected for prosecution for any putative violation of the statute.

GOLDBERG, Justice, dissenting.

Because I am of the opinion that a parent's obligation to support a child is extinguished upon the termination of his or her parental rights, I respectfully dissent from the opinion of the majority.

As an initial matter, the introduction of this first offender to Rhode Island's criminal justice system is nothing short of a shocking episode in the jurisprudence of the Family Court. On May 25, 2000, David Fritz (Fritz or defendant) was arraigned on one felony count of failure to pay child support in violation of G.L.1956 § 11–2–1.1. He was a first offender. Bail was set at $40,000 with surety, an amount that is higher than the bail that is imposed for drug dealers, child molesters and thieves. Unable to post surety bail, defendant was remanded to the Adult Correctional Institutions (ACI), where he languished, without counsel, for more than four months. Fritz did not return to court until July, 28, 2000, more than two months after his initial appearance. According to the Family Court file, defendant was remanded to prison, again without the benefit of counsel, "to ensure his court appearance." On August 24, 2000, three months after his arrest and still without counsel, defendant was re-arraigned, entered a second plea of not guilty and was returned to the ACI based on his continued inability to post this exorbitant surety bail. Counsel finally was appointed, and entered an appearance on September 7, 2000, more than three months after defendant's arrest and

incarceration. The defendant was again remanded to the ACI for lack of bail. Thus, although facing a maximum of five years imprisonment for this felony offense, defendant was not afforded counsel for more than three months and was held in lieu of bail for more than four months. Simply put, this individual, with no prior criminal record, who is presumed innocent, was ignored by the Family Court. It goes without saying that the courts of this state that are vested with felony criminal jurisdiction have concomitant constitutional responsibilities, including compliance with the Bill of Rights all of which are noticeably absent in this case.

### Failure to Pay Child Support

Although a warrant for defendant's arrest for failure to pay child support was issued on December 2, 1997, defendant was not apprehended for more than two years until he was arrested at his home on May 24, 2000. The defendant was gainfully employed and living in an apartment in North Kingstown. A criminal information charging defendant with one count of failure to pay child support in violation of § 11–2–1.1 was filed on August 7, 2000. Included in the information was a statement by defendant's former wife in which she informed the investigator that defendant's parental rights previously had been terminated. However, no further investigation was undertaken.

The defendant's plight was compounded by the court's failure to provide him with counsel as guaranteed by the Sixth Amendment to the United States Constitution. We are informed that upon his arrest and incarceration, defendant wrote to the Chief Judge of the Family Court and notified him that his parental rights to his children had been terminated in 1994. This communication was referred to the Court's legal counsel who responded that she was unable to find an order verifying

the termination and that defendant, therefore, was responsible for the child support. However, aided by counsel, at a hearing on Fritz's continued incarceration because of lack of bail, the fact that his parental rights had been terminated was "instantly verified" by the clerk through a simple telephone call to the Family Court juvenile office. Upon verification that defendant's parental rights had been terminated, he was released on $10,000 personal recognizance. The defendant subsequently moved to dismiss the information, asserting that the state failed to present a *prima facie* case.[7]

As in every termination case in this state, the decree of termination resulted from a petition, filed by the Department of Children, Youth and Families (DCYF), alleging that the children had been abused by their father. Significantly, in Rhode Island, unlike many jurisdictions, parental rights can be terminated only upon petition of "a governmental child placement agency or licensed child placement agency after notice to the parent and a hearing on the petition * * *." G.L.1956 § 15–7–7(a). Thus, a "voluntary termination" of parental rights cannot occur at the instance of a recalcitrant parent who wishes to be relieved of his or her child support responsibilities. An individual may not bring a petition to terminate his or her own parental rights unless there is pending a petition for adoption of the child. *In re John*, 605

A.2d 486, 488–89 (R.I.1992). The record in this case discloses that a complaint alleging abuse of the children was filed against this defendant, and the children were placed in the custody of DCYF with physical placement with the mother. At some later point, defendant, with the assistance of counsel, elected not to contest the petition and voluntarily consented to DCYF's termination petition. A hearing was held by a justice of the Family Court during which defendant testified that he was freely and voluntarily consenting to the termination of his parental rights. At the conclusion of the hearing, the hearing justice declared that defendant's parental rights permanently were terminated and appointed DCYF as guardian of the children. The right of the father to give or withhold consent to their adoption and to be given notice of an adoption also was extinguished. I am satisfied that this proceeding resulted in the complete severance of the parent-child relationship and that the rights of both defendant and the children were considered and finally determined. Accordingly, I am of the opinion that defendant's obligation to continue to support these children ended when he relinquished his parental rights.

In his written decision dismissing the criminal information, the Family Court hearing justice found that defendant had relinquished "his right to parent his children and all that is encompassed with that

---

**7.** Although defendant moved to dismiss the information pursuant to G.L.1956 § 12–12–1.7, failure to set forth a *prima facie* case, the majority has remanded this case to the Family Court "for a hearing to ascertain whether the action against defendant represented a selective prosecution of [defendant]." This is procedurally and substantively incorrect; these issues were not raised before the hearing justice and are not appropriately before this Court. Further, the constitutional issue of selective prosecution is not cognizable under § 12–12–1.7. *See State v. Jenison*, 442 A.2d

866, 875 (R.I.1982) (the duty of hearing justice in passing on a motion to dismiss filed pursuant to § 12–12–1.7 is "to examine the information and the attached exhibits to determine 'whether there exists probable cause to believe that the offense charged ha[d] been committed and that [the] defendant [had] committed it' "). In ruling on a motion to dismiss for lack of probable cause, a hearing justice is not permitted to pass upon any constitutional challenges set forth by the defendant.

responsibility, as well as his right to give or withhold consent to their adoption." Pursuant to G.L.1956 § 15–7.2–2, it is "the policy of this state that adoption is based upon the legal termination of parental rights and responsibilities of birth parents and the creation of the legal relationship of parents and child between an adoptee and the adoptive parents." He concluded that an adoption cannot occur until there has been a termination of the natural parent's rights and responsibilities to the child. Thus, I believe that the termination of parental rights also extinguishes one's parental responsibilities, including the responsibility to support the children; otherwise the children are not available for adoption and the parent-child relationship, at least concerning maintenance and support, has not been severed. I am of the opinion that the decision of the majority creates an anomalous situation in which the parental relationship is not terminated by decree of the Family Court and a parent who is obliged to continue to support a child has a due process right to notice of the child's adoption so that his or her support obligations can be discontinued. Further, in cases such as the one before us, in which the children remain with their mother, the amount of support due from each parent changes from time to time. Since the financial resources of *both* parents must be considered in fixing the amount of child support, a parent has the right to petition the Family Court for a modification of child support based upon a change in circumstances. These proceedings necessarily will involve further entanglements between the parties, a situation I suggest that is not in the best interests of the children. In my opinion, this is an absurd result that frustrates the intent of the Legislature as clearly expressed in § 15–7–7(a) that the termination of parental rights includes the termination of "*any* and *all* legal rights of the parent to the

child, including the right to notice of any subsequent adoption proceedings involving the child * * *." (Emphases added.) The record discloses that DCYF does not seek child support from parents whose children have been placed in its custody. Indeed, it was acknowledged that the state does not seek support from parents whose children are in state custody and routinely vacates any arrearages that have accrued from the date the termination petition was filed. I agree that this policy comports with the best interests of the child.

Because adoption and the termination of parental rights were unknown to the common law, this entire body of law is statutory. It is axiomatic that statutes in derogation of the common law are strictly construed. A statute that provides for the termination of parental rights has an impact upon a protected liberty interest of the parent to the child and has significant consequences to the parent who is deprived of the right to associate with his or her own child. *In re John*, 605 A.2d at 488. Accordingly, these statutes are strictly construed, and this Court will not read into the statute conditions that are not expressly set forth therein. *Id.* With respect to terminations pursuant to § 15–7–6, "the primary inquiry undertaken by the court is whether the surrender of parental rights is voluntary and in the best interests of the child * * *." *In re Kyle S.*, 692 A.2d 329, 332 (R.I.1997). However, whether the termination of parental rights is effectuated pursuant to §§ 15–7–5, 15–7–6 or 15–7–7, the Legislative intent is the same, "to provide children who are in need with permanent and safe placement." *In re Kyle S.*, 692 A.2d at 332. In my opinion, if the Legislature intended to require a parent to support his or her children after a decree permanently terminating the parent-child relationship, it would have done so in clear

and unequivocal language. This Court has recognized the salient purpose of § 15–7–6 is to provide for the voluntary termination of parental rights without regard to the question of parental unfitness. We have declined to construe chapter 7 of title 15 in such a way as to discourage the voluntary termination of parental rights. *See In re Kyle S.,* 692 A.2d at 333 (previous voluntary termination of parental rights may not serve as the basis of a later involuntary termination petition). In my opinion, the construction placed upon this chapter by the majority, holding that a parent who voluntarily relinquishes his or her rights to a child still is obliged to support that child, will have the unwarranted effect of discouraging voluntary terminations that may otherwise be in a child's best interests.

It should be emphasized that in this case we have not been asked to address the rights of the children. The best interests of the children were specifically addressed and decided by the Family Court hearing justice who, based on a petition filed by a state child protective agency, ordered the termination of defendant's rights to his children. The rights of the children to live in a safe and nurturing environment without their father's influence and participation were judicially and finally adjudicated in 1994. I disagree with the majority that the children have any residual rights with respect to their father, save for the right to inherit. The General Assembly has provided that the *only* right a child possesses after the termination of the parent-child relationship is the right to inherit from his or her natural parents pursuant to § 15–7–17. I suggest that if the General Assembly wanted to afford these children any other rights, including the right to support, it would have expressly done so, particularly since termination decrees cannot arise from divorce proceedings.

An overwhelming majority of states have recognized that a parent's duty to support a child is extinguished by operation of law upon the termination of his or her parental rights. This concept rests upon the fairly uniform belief that "[a] person who has relinquished parental rights through adoption, a voluntary termination of parental rights or an involuntary severance of parental rights is no longer a parent." *State ex rel. Secretary of Social and Rehabilitation Services v. Clear,* 248 Kan. 109, 804 P.2d 961, 967 (1991). Thus, "[t]he parent whose rights have been [permanently] severed is relieved of all duties and obligations to the child." *Id.* Indeed, I am hard-pressed to find a single jurisdiction that approaches the position taken by the majority today. I believe that in the absence of explicit legislation to the contrary, Rhode Island should join the majority of states that recognize, as did the Family Court hearing justice, that parental responsibilities flow from the existence of parental rights and a termination decree results in the dissolution of the parent-child relationship and all that it entails.

I also reject, as legally incorrect, the fear expressed by the majority that recalcitrant parents would line up to voluntarily terminate their rights simply to avoid child support. First, parents cannot get in line without an invitation from the state. As noted, in this jurisdiction, only a child protection agency such as DCYF can petition for the termination of a parent's rights, whether the petition is voluntary or involuntary. Second, the overarching issue to be decided by the Family Court hearing justice is what is in the child's best interests. Significantly, there has been no suggestion that Fritz agreed to the termination of his parental rights to avoid child support. These proceedings were initiated by an abuse complaint prosecuted by DCYF.

Contrary to the fears expressed by the majority, numerous states that have addressed this question simply have refused to allow a termination based on the desire of a parent to escape his or her child support responsibilities. Indeed, some states, including the State of Connecticut, permit a parent to petition for the termination of his or her parental rights even in the absence of a pending adoption. However, no state permits a termination simply to avoid child support obligations. Because it is universally recognized that a termination extinguishes the parent's obligation to support the child, courts closely examine these petitions with a view toward the child's best interests. *In re Bruce R.,* 234 Conn. 194, 662 A.2d 107, 112 (1995). In jurisdictions that allow a parent to petition for the voluntarily termination of his or her parental rights, the desire to avoid support responsibilities is an insufficient ground for granting a petition; the test is always the best interests of the child. *See, e.g., Ex parte Brooks,* 513 So.2d 614, 616 (Ala.1987) (termination of parental rights statutes are not "means for a parent to avoid his obligation to support his child"); *In re K.L.S.,* 180 Ga.App. 688, 350 S.E.2d 50, 51 (1986) ("statutory authority of the juvenile court to entertain [voluntary] petitions to terminate parental rights does not extend to petitions by parents seeking judicial imprimatur" to abandon their parental responsibilities); *In re Interest of D.W.K.,* 365 N.W.2d 32, 35 (Iowa 1985) (father's termination petition denied where termination would "ultimately * * * open a hatch for a parent to escape his or her duty to support a child"); *In re Welfare of Alle,* 304 Minn. 254, 230 N.W.2d 574, 577 (1975) (children have a right to look to their legal father for support and father's rights may not be terminated to avoid support); *In re Interest of R.A.S.,* 826 S.W.2d 397, 399 (Mo.Ct.App.1992) (consensual termination petition denied where evidence showed that father sought to avoid his support obligation); *R.H. v. M.K.,* 254 N.J.Super. 480, 603 A.2d 995, 997 (Ch.Div. 1991) (parent may not voluntarily surrender his or her parental rights other than in adoption contest); *Commonwealth Department of Public Welfare ex rel. Hager v. Woolf,* 276 Pa.Super. 433, 419 A.2d 535, 538 (1980) (parent may not seek to avoid support obligation by the "mere filing of a petition to terminate parental rights"); *In re Interest of A.B.,* 151 Wis.2d 312, 444 N.W.2d 415, 419 (1989) (support obligation of the father to be considered as one of the considerations in determining the best interests of the child in cases of consensual termination). Thus, in my opinion, it is absurd to suggest that a trial court, upon the petition of a state agency, ever will terminate a parent's rights simply to relieve the parent of his or her child support responsibilities. An overwhelming number of jurisdictions have recognized that the termination of parental rights also extinguishes the obligation to support the child. Even in states that permit a parent to seek termination, courts conduct a searching inquiry into the best interests of the child and deny a request for voluntary termination in cases in which a parent seeks to avoid child support; "no parent may blithely walk away from his or her parental responsibilities." *In re Interest of A.B.,* 444 N.W.2d at 419. That is certainly not what happened here.

Accordingly, for the reasons stated herein, I dissent from the decision of the majority and would uphold the decision of the hearing justice.