JAMES T. FLAHERTY V. MICHAEL MORAN.

*Nuisance—Abatement of in equity.*

A fence erected *maliciously,* and with no other purpose than to shut out the light and air from a neighbor's windows, is a nuisance; citing *Burke v. Smith,* 69 Mich. 380.

Appeal from Kent. (Grove, J.)  Argued May 7, 1890. Decided May 16, 1890.

Bill to compel the removal of a fence as a nuisance. Defendant appeals. Decree for removal affirmed. The facts are stated in the opinion.

*Thompson & Temple,* for complainant.

*L. E. Carroll,* for defendant.

[Counsel cited no authorities, except *Burke v. Smith,* 69 Mich. 380.—REPORTER.]

LONG, J. The parties to this cause own adjoining lots in the city of Grand Rapids, complainant's lot being on the north-west corner of Goodrich and Lagrave streets,

and the defendant's lot adjoining it on the north; both extending westerly to an alley in the rear. The line of the lots was established before either of the parties purchased. The defendant built a house some years ago near the north line of his lot, and standing back some distance from the street. He occupies this property as his home.

In August, 1888, the complainant commenced the erection of a house on the front end of his lot. It was to be a double house, facing Lagrave street, and the north wall being laid about four feet from the line between the two lots; the front wall being much nearer Lagrave street than defendant's house. After the foundation wall was laid, the defendant built a screen or board fence, about 10 feet in height, along the line of the lots, but upon his own premises, extending from the front wall of the complainant's house backward the whole length of complainant's house.

It is claimed by the complainant that the screen or fence was built maliciously, and for the purpose of darkening his (complainant's) rooms, and for no useful purpose. The bill is filed to compel the defendant to remove such fence. On the hearing in the court below, the court decreed such removal within 60 days from the decree, and perpetually enjoined the defendant from building or maintaining such a screen or fence. From this decree defendant appeals.

The testimony was taken in open court, and there seems but little dispute of fact, except as to the motive which induced the defendant to build such a fence. It appears that while the complainant was building his house, and during the time the foundation wall was being placed, the wife of the defendant came up and saw Mrs. Flaherty near there, and inquired if the complainant's house was to stand so near the street; and being advised

that it was, she remarked that it would spoil the looks of their place and shut off their south view, and, if it was so built, she would build a board fence between them 12 feet high. Soon after this talk the fence was built. Posts were put in the ground, stringers put across, and the boards, extending up and down, were nailed on these stringers, on the defendant's side; the side towards complainant's house being left rough and unplaned. This fence stands within about four feet of complainant's house, and, as the proofs show, darkens his rooms, and obstructs the light and air. The defendant claims not to have known much about the erection of the fence; but it is shown that he brought the posts there, and paid the bill presented for its construction, though his wife looked generally to the height and character of the fence while it was being built.

It is not profitable to recite the evidence given on the hearing. The only excuse made by the defense for its erection comes from the wife of the defendant, who testifies that, while the walls of the complainant's house were being erected, she met Mrs. Flaherty on the corner of the lawn, and inquired if the house was to come so near the street as that, and, being told that it was, she responded to Mrs. Flaherty—

"Don't you know that you are going to injure the property on the street, and injure ourselves entirely?"

Mrs. Flaherty said:

"We are building the house for ourselves, not for other people."

Mrs. Moran said:

"Very well. We will build a fence for ourselves, and we will make it twelve feet high."

Soon after this the fence was built, and has ever since been so kept and maintained. Mrs. Moran says, upon an inquiry being made, as to who maintains it:

"I do, for my own benefit,—to keep the neighbors from looking through my house, and to protect my lawn. It is not pleasant to live in a house where folks can look right through it, and have another house down in front of you, that you cannot sit down by a window unless your neighbors can see you. There are times when folks want to be alone in their own house; and, furthermore, I want that fence to plant vines on."

The *animus* of the whole matter is plainly discernible from the testimony of Mrs. Moran. The complainant had built his house standing somewhat nearer the street than defendant's house, so that Mrs. Moran's view was obstructed towards the south, and she thought it hurt the looks of her place. It is very evident that the fence serves no useful or needful purpose, and was built, and is now maintained, out of pure malice and spite. The case comes so squarely within the opinion of Mr. Justice MORSE in *Burke v. Smith,* 69 Mich. 380, that I shall not discuss the questions of law involved. It was there held, by an equal division of the Court as then constituted, that a fence erected maliciously, and with no other purpose than to shut out the light and air from a neighbor's window, is a nuisance. I fully approve of the reasoning of Mr. Justice MORSE in that case, and rest this case upon the reasons there given by him.

The decree must be affirmed, with costs.

The other Justices concurred.