RACICH, Appellant, v. MASTROVICH, Respondent.

(273 N. W. 660)

(File No. 8009.   Opinion filed June 1, 1937)

Kellar & Kellar, of Lead, for Appellant.

Francis J. Parker, of Deadwood, for Respondent.

RUDOLPH, P. J.   The plaintiff has appealed to this court from an order of the trial court sustaining a demurrer to his complaint.   The complaint alleges in substance that the plaintiff and defendant are adjoining landowners, that the defendant maliciously and with the intent to damage the property of the plaintiff caused to be erected what is referred to as a "spite fence."   This fence was built on the line of defendant's property and in such a manner that it "completely shut off the air and light in the apartments located along the west side of plaintiff's said building, with the

further results that the apartments are now dark, necessitating the use of electricity, and are also stuffy from lack of ventilation." Plaintiff further alleges that the building of this fence was to "harass, vex and annoy the plaintiff," and "entirely useless to defendant and without value to her property." From the complaint it appears that plaintiff has caused the removal of said fence, but that defendant has threatened to and will reconstruct the fence unless restrained. Attached to and made a part of the complaint is a photograph which more clearly than words describes the fence and surrounding conditions. No objection is made to the photograph being made a part of the complaint, and it is treated by all parties to this action as a true and correct picture. That photograph is inserted herein:

The complaint further alleges that prior to building the fence above pictured, defendant had built a similar fence which was directly against the building of plaintiff and located on his property. When it was discovered this first fence was on plaintiff's property, it was removed and the pictured fence was built.

Plaintiff seeks an injunction enjoining the defendant from constructing and erecting a fence similar to that herein pictured.

This court has never passed upon the right of an adjoining landowner to erect a so-called "spite fence," and by a "spite fence" we mean a fence erected for no benefit or pleasure to the person erecting it, but solely with the malicious motive of injuring the adjoining owner by shutting out his light, air, and view. Prior to the decision by the Michigan court in the case of Burke v. Smith, 69 Mich. 380, 37 N. W. 838, 839, which was given unanimous approval by the Michigan court in the case of Flaherty v. Moran, 81 Mich. 52, 45 N. W. 381, 8 L. R. A. 183, 21 Am. St. Rep. 510, it was very generally held that an owner of land might erect on his own land a structure for the express purpose of shutting out the light, air, and view from the adjoining landowner, and that the motive and intent of the person building this structure was not material. We quote at length from the Michigan case above cited:

"But his [plaintiff's] contention is that these screens being a damage to the houses of complainant and being erected for no good or useful purpose, but with the malicious motive of doing injury, they become and are such a nuisance to the property of complainant that equity will cause their removal, and enjoin their future erection or continuance. He invokes the legal maxim that 'every man in the use of his own property must avoid injury to his neighbor's property as much as possible;' and argues that, while it is true that when one pursues a strictly legal right his motives are immaterial, yet no man has a right to build and maintain an entirely useless structure for the sole purpose of injuring his neighbor. The argument has force, and appears irresistible, in the light of the moral law that ought to govern all human action. And the civil law, coming close to the moral law, declares that 'he who, in making a new work upon his own estate, uses his right without trespassing either against any law, custom, title, or possession, which may subject him to any service towards his neighbors, is not answerable for the damages which they may chance to sustain thereby, unless it be that he made that change merely with a view to hurt others without advantage to himself.'

"Thus the civil law recognizes the moral law, and does not permit the owner of land to do an act upon his own premises for

the express purpose of injuring his neighbor, when the act brings no profit or advantage to himself.

. "The law furnishes redress, because the injury is malicious and unjustifiable. The moral law imposes upon every man the duty of doing unto others as he would that they should do unto him; and the common law ought to, and in my opinion does, require him to so use his own privileges and property as not to injure the rights of others maliciously, and without necessity.

. "It is true that he can use his own property, if for his own benefit or advantage, in many cases to the injury of his neighbor; and such neighbor has no redress, because the owner of the property is exercising a legal right which infringes on no legal right of the other. Therefore, and under this principle, the defendant might have erected a building for useful or ornamental purposes, and shut out the light and air from complainant's windows; but when he erected these 'screens' or 'obscurers' for no useful or ornamental purpose, but out of pure malice against his neighbor, it seems to me a different principle must prevail. I do not think the common law permits a man to be deprived of water, air, or light for the mere gratifification of malice. No one has an exclusive property in any of these elements except as the same may exist or be confined entirely on his own premises. If a pond of water lies entirely within his lands, without inlet and outlet, he may do with it as he pleases while he keeps it upon his own premises. He may also use as he pleases what air or light he can keep and hold within his dominion upon his own lands. But to the air and light between the earth and the heavens the right of each man is more or less dependent upon that of his neighbor. His neighbor must bear the inconvenience and annoyance that the legal and beneficial use of his premises engenders in this respect, if such use falls short of what the law treats as a nuisance; but the right to use one's premises to shut out or curtail the use of either of these elements by his neighbor, out of mere malice and wickedness, when such use is not beneficial to him in any sense, does not exist in law or equity. The complainant in this case had a right to the use of the air and the light about his houses, and over defendant's lands, until such right came in conflict with the defendant's enjoyment of his property. This air and light was free and unconfined, and the common property of all. * * *

"But it must be remembered that no man has a legal right to make a malicious use of his property, not for any benefit or advantage to himself, but for the avowed purpose of damaging his neighbor. To hold otherwise would make the law a convenient engine, in cases like the present, to injure and destroy the peace and comfort, and to damage the property, of one's neighbor for no other than a wicked purpose, which in itself is, or ought to be unlawful. The right to do this cannot, in an enlightened country, exist, either in the use of property, or in any way or manner. There is no doubt in my mind that these uncouth screens or 'obscurers,' as they are named in the record, are a nuisance, and were erected without right, and for a malicious purpose.

"What right has the defendant, in the light of the just and beneficent principles of equity, to shut out God's free air and sunlight from the windows of his neighbor, not for any benefit or advantage to himself, or profit to his land, but simply to gratify his own wicked malice against his neighbor? None whatever.

"The wanton infliction of damage can never be a right. It is a wrong, and a violation of right, and is not without remedy. The right to breathe the air, and to enjoy the sunshine, is a natural one; and no man can pollute the atmosphere, or shut out the light of heaven, for no better reason than that the situation of his property is such that he is given the opportunity of so doing, and wishes to gratify his spite and malice towards his neighbor.

"It is said that the adoption of statutes in several of the states making this kind of injury actionable shows that the courts have no right to furnish the redress without statutory authority. It has always been the pride of the common law that it permitted no wrong with damage, without a remedy. In all the cases where this class of injuries have occurred, proceeding alone from the malice of the defendant, it is held to be a wrong accompanied by damage. That courts have failed to apply the remedy has ever been felt a reproach to the administration of the law; and the fact that the people have regarded this neglect of duty on the part of the courts so gross as to make that duty imperative by statutory law furnishes no evidence of the creation of a new right or the giving of a new remedy, but is a severe criticism upon the courts for an omission of duty already existing, and now imposed by statute upon them, which is only confirmatory of the common law."

This reasoning in the Michigan case appeals to us, as it has to a number of courts since the decision in that case, as a more just and common-sense view of the question than the view expressed in the early cases. As stated in the Oklahoma case of Hibbard v. Halliday, hereinafter referred to, since the decision in the Michigan case "the trend of authority certainly has been the other way." See Hibbard v. Halliday, 58 Okl. 244, 158 P. 1158, 1160, L. R. A. 1916F, 903; Norton v. Randolph, 176 Ala. 381, 58 So. 283, 40 L. R. A. (N. S.) 129, Ann. Cas. 1915A, 714; Barger v. Barringer, 151 N. C. 433, 66 S. E. 439, 25 L. R. A. (N. S.) 831, 19 Ann. Cas. 472; Dunbar v. O'Brien, 117 Neb. 245, 220 N. W. 278. For reference to the many cases passing upon the question here involved, we refer to the cases, notes, and annotations in the following reports: Flaherty v. Moran, 81 Mich. 52, 45 N. W. 381, 8 L. R. A. 184, 21 Am. St. Rep. 510; Letts v. Kessler, 54 Ohio St. 73, 42 N. E. 765, 40 L. R. A. 177; Passaic Print Works v. Ely & Walker Dry-Goods Co. (C. C. A.) 105 F. 163, 62 L. R. A. 683; Barger v. Barringer, 151 N. C. 433, 66 S. E. 439, 25 L. R. A. (N. S.) 831, 19 Ann. Cas. 472; Bush v. Mockett, 95 Neb. 552, 145 N. W. 1001, 52 L. R. A. (N. S.) 736; Hibbard v. Halliday, 58 Okl. 244, 158 P. 1158, L. R. A. 1916F, 903 Bixby v. Cravens, 57 Okl. 119, 156 P. 1184 L. R. A. 1916E, 871; Wilson v. Irwin, 144 Ky. 311, 138 S. W. 373, 42 L. R. A. (N. S.) 722.

In essence all of the cases supporting the view taken by the Michigan court refer to and rely upon the reasoning expressed in the Burke v. Smith Case. We are also satisfied to rest our decision upon the reasoning therein expressed and any comment thereon seems to us to be unnecessary.

We therefore hold in this case that defendant may build upon her property any fence which she builds for her benefit or pleasure or any good reason even though she cause an injury to the plaintiff, but if she builds a fence without any benefit or pleasure to herself, but solely with the malicious motive of injuring the plaintiff by shutting out his light, air, or view, she thereby violates the rights of the plaintiff.

From the allegations of the complaint it appears that defendant intends to and will, unless restrained, maliciously build a fence which is of no benefit to herself and which will be built solely for

the purpose of annoying and injuring the plaintiff by shutting out the light, air, and view from plaintiff's building.

The allegations in the complaint, if established, are sufficient in our opinion to entitle the plaintiff to the injunction he has prayed for, and it follows that the order appealed from must be, and is, reversed.

ROBERTS and SMITH, JJ., concur.

WARREN, J., dissents.

POLLEY, J., not sitting.