509 P.2d 785

**SUNDOWNER, INC., an Idaho corporation, Plaintiff-Respondent,**

v.

**James C. KING and Agnes C. King, husband and wife, Defendants-Appellants.**

**No. 11043.**

Supreme Court of Idaho.

May 10, 1973.

Donald E. Downen, Gigray, Downen & Morgan, Caldwell, for defendants-appellants.

Robert P. Tunnicliff, of Miller, Weston and Tunnicliff, Caldwell, for plaintiff-respondent.

SHEPARD, Justice.

This is an appeal from a judgment ordering partial abatement of a spite fence erected between two adjoining motels in Caldwell, Idaho. This action is evidently an outgrowth of a continuing dispute between the parties resulting from the 1966 sale of a motel. *See*: King v. H. J. McNeel, Inc., 94 Idaho 444, 489 P.2d 1324 (1971).

In 1966 Robert Bushnell sold a motel to defendants-appellants King. Bushnell then built another motel, the Desert Inn, on property immediately adjoining that sold to the Kings.

The Kings thereafter brought an action against Bushnell (H. J. McNeel, Inc.) based on alleged misrepresentations by Bushnell in the 1966 sale of the motel property. *See*: King v. H. J. McNeel, Inc., *supra*. In 1968 the Kings built a large structure, variously described as a fence or sign, some 16 inches from the boundary line between the King and Bushnell properties. The structure is 85 ft. in length and 18 ft. in height. It is raised 2 ft. off the ground and is 2 ft. from the Desert Inn building. It parallels the entire northwest side of the Desert Inn building, obscures approximately 80% of the Desert Inn building and restricts the passage of light and air to its rooms.

Bushnell brought the instant action seeking damages and injunctive relief compelling the removal of the structure. Following trial to the court, the district court found that the structure was erected out of spite and that it was erected in violation of a municipal ordinance. The trial court

ordered the structure reduced to a maximum height of 6 ft.

The Kings appeal from the judgment entered against them and claim that the trial court erred in many of its findings of fact and its applications of law. The Kings assert the trial court erred in finding that the "sign" was in fact a fence; that the structure had little or no value for advertising purposes; that the structure cuts out light and air from the rooms of the Desert Inn Motel; that the structure has caused damage by way of diminution of the value of the Desert Inn Motel property; that the erection of the structure was motivated by ill-feeling and spite; that the structure was erected to establish a dividing line; and that the trial court erred in failing to find the structure was necessary to distinguish between the two adjoining motels.

■ We have examined the record at length and conclude that the findings of the trial court are supported by substantial although conflicting evidence. The trial court had before it both still and moving pictures of the various buildings. The record contains testimony that the structure is the largest "sign" then existing in Oregon, Northern Nevada and Idaho. An advertising expert testified that the structure, because of its location and type, had no value for advertising and that its cost, i. e., $6,300, would not be justified for advertising purposes. Findings of fact will not be set aside on appeal unless they are clearly erroneous, and when they are supported by substantial though conflicting evidence they will not be disturbed on appeal. Hisaw v. Bishop, 95 Idaho 145, 504 P.2d 818 (1972); I.R.C.P. 52(a).

■ The absence of findings of fact may be disregarded by an appellate court if the record is so clear that they are not necessary for a complete understanding of the issues. Call v. Marler, 89 Idaho 120, 403 P.2d 588 (1965).

The pivotal and dispositive issue in this matter is whether the trial court erred in requiring partial abatement of the structure on the ground that it was a spite fence. Under the so-called English rule, followed by most 19th century American courts, the erection and maintenance of a spite fence was not an actionable wrong. These older cases were founded on the premise that a property owner has an absolute right to use his property in any manner he desires. *See*: 5 Powell on Real Property, ¶696, p. 276 (1949 ed. rev'd 1968); Letts v. Kessler, 54 Ohio St. 73, 42 N.E. 765 (1896).

Under the modern American rule, however, one may not erect a structure for the sole purpose of annoying his neighbor. Many courts hold that a spite fence which serves no useful purpose may give rise to an action for both injunctive relief and damages. *See*: 5 Powell, *supra*, ¶696, p. 277; IA Thompson on Real Property, § 239 (1964 ed.). Many courts following the above rule further characterize a spite fence as a nuisance. *See*: Hornsby v. Smith, 191 Ga. 491, 13 S.E.2d 20 (1941); Barger v. Barringer, 151 N.C. 433, 66 S.E. 439 (1909); Annotation 133 A.L.R. 691.

One of the first cases rejecting the older English view and announcing the new American rule on spite fences is Burke v. Smith, 69 Mich. 380, 37 N.W. 838 (1888). Subsequently, many American jurisdictions have adopted and followed *Burke* so that it is clearly the prevailing modern view. *See*: Powell, *supra*, ¶696 at p. 279; Flaherty v. Moran, 81 Mich. 52, 45 N.W. 381 (1890); Barger v. Barringer, *supra*; Norton v. Randolph, 176 Ala. 381, 58 So. 283 (1912); Bush v. Mockett, 95 Neb. 552, 145 N.W. 1001 (1914); Hibbard v. Halliday, 58 Okla. 244, 158 P. 1158 (1916); Parker v. Harvey, 164 So. 507 (La.App.1935); Hornsby v. Smith, *supra*; Brittingham v. Robertson, 280 A.2d 741 (Del.Ch.1971). Also see the opinion of Mr. Justice Holmes in Rideout v. Knox, 148 Mass. 368, 19 N.E. 390 (1889).

In *Burke* a property owner built two 11 ft. fences blocking the light and air to his neighbors' windows. The fences served no useful purpose to their owner and were erected solely because of his malice

toward his neighbor. Justice Morse applied the maxim *sic utere tuo ut alienum non laedas,* and concluded:

"But it must be remembered that no man has a legal right to make a malicious use of his property, not for any benefit or advantage to himself, but for the avowed purpose of damaging his neighbor. To hold otherwise would make the law a convenient engine, in cases like the present, to injure and destroy the peace and comfort, and to damage the property, of one's neighbor for no other than a wicked purpose, which in itself is, or ought to be, unlawful. The right to do this cannot, in an enlightened country, exist, either in the use of property, or in any way or manner. There is no doubt in my mind that these uncouth screens or 'obscurers' as they are named in the record, are a nuisance, and were erected without right, and for a malicious purpose. What right has the defendant, in the light of the just and beneficent principles of equity, to shut out God's free air and sunlight from the windows of his neighbor, not for any benefit or advantage to himself, or profit to his land, but simply to gratify his own wicked malice against his neighbor? None whatever. The wanton infliction of damage can never be a right. It is a wrong, and a violation of right, and is not without remedy. The right to breath the air, and to enjoy the sunshine, is a natural one; and no man can pollute the atmosphere, or shut out the light of heaven, for no better reason than that the situation of his property is such that he is given the opportunity of so doing, and wishes to gratify his spite and malice towards his neighbor." 37 N.W. at 842.

We agree both with the philosophy expressed in the *Burke* opinion and

with that of other jurisdictions following what we feel is the better-reasoned approach. We hold that no property owner has the right to erect and maintain an otherwise useless structure for the sole purpose of injuring his neighbor. The trial court found on the basis of substantial evidence that the structure served no useful purpose to its owners and was erected because of the Kings' ill-will and emnity toward their neighboring competitor. We therefore hold that the trial court did not err in partially abating and enjoining the "sign" structure as a spite fence.

Our decision today is not entirely in harmony with White v. Bernhart, 41 Idaho 665, 241 P. 367 (1925). *White* held that an owner could not be enjoined from maintaining a dilapidated house as a nuisance, even though the house diminished the value of neighboring property. *White* is clearly distinguishable from the case at bar. Rather than a fence, it involved a dwelling house which was not maliciously erected. The rule announced herein is applicable only to structures which serve no useful purpose and are erected for the sole purpose of injuring adjoining property owners. There is dictum in *White* which suggests that a structure may only be enjoined when it is a nuisance per se. Such language is inconsistent with our decision today and it is hereby disapproved.

Appellants King assign error to findings and conclusions of the trial court relating to the applicability and interpretation of Caldwell Zoning Ordinance No. 1085. Our disposition of this appeal makes it unnecessary to consider those issues.

The judgment of the trial court is affirmed. Costs to respondent.

DONALDSON, C. J., McQUADE and McFADDEN, JJ., and HAGAN, District Judge, concur.