**In re Richard JOHN.**

**No. 91–445–Appeal.**

Supreme Court of Rhode Island.

March 19, 1992.

Frank J. Pannozzi, Asst. Public Defender and Anthony Caprio, Caprio & Caprio, Providence, for plaintiff.

A. Gregory Frazier, Cranston, for petitioner.

Catherine Gibran, Asst. Public Defender, for respondent.

## OPINION

SHEA, Justice.

This matter comes before the Supreme Court on a certified question from the Family Court. That question states, "May an individual who is not a licensed or governmental child placement agency bring a petition to terminate a parent's parental rights under R.I.G.L. section 15–7–7 without there being a pending adoption petition?" We answer this question in the negative.

On October 9, 1990, Heather Villella (Heather) filed a petition to terminate the parental rights of her former husband, Richard Villella, Sr. (Richard), in their minor child, Richard Villella, Jr. (Richard Jr.). The petition alleges that Richard has failed to support Richard, Jr., since 1987, when the couple divorced, and has not maintained contact with him since August 1989. In the divorce judgment the mother was granted sole custody of the child and the father was denied visitation privileges. As grounds for termination Heather argues that the father has willfully neglected to provide proper care and maintenance for the child under G.L.1956 (1988 Reenactment) § 15–7–7(1)(a) and that he has abandoned or deserted the child under § 15–7–7(1)(d). At the present time no petition to adopt Richard, Jr., has been filed by any party to this action or by anyone else.

Section 15–7–7 provides in pertinent part:

> "Termination of parental rights.—(1) The court shall, upon a petition duly filed after notice to the parent and hearing thereon, terminate any and all legal rights of the parent to the child, including the right to notice of any subsequent adoption proceedings involving the child if the court finds as a fact that:
>
> (a) The parent has willfully neglected to provide proper care and maintenance for the child.
>
> (d) * * * The parent has abandoned or deserted the child."

Heather argues that the present statutory scheme concerning adoption of children, of which § 15–7–7 is a part, authorizes an individual, not connected to a state agency, to petition the court for termination of parental rights under § 15–7–7. Heather asserts that although the statute does not specifically establish a private right to petition for termination of parental rights, a private right to petition is established by the legislative history of the act and by the entire statutory scheme.

 We begin our discussion of the law applicable to this case by noting that a natural parent's "desire for and right to 'the companionship, care, custody, and management of his or her children'" is a fundamental right. *Santosky v. Kramer*, 455 U.S. 745, 758–59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599, 610 (1982) (quoting *Lassiter v. Department of Social Services*, 452 U.S. 18, 27, 101 S.Ct. 2153, 2160, 68 L.Ed.2d 640, 649 (1981)). The relationship between a natural parent and a child is significant and should be preserved. If the relationship cannot be preserved and parental rights are terminated, the parent has no legal right to see the child or even to have knowledge of his or her whereabouts. Thus, the right of a natural parent to his or her child is forfeited only in extreme circumstances. *In re LaPorte*, 103 R.I. 232, 235, 236 A.2d 264, 266 (1967).

 When extreme circumstances occur, as when a parent is unfit or unable to care for a child, the child often comes into the care of the Department of Children, Youth, and Families (DCYF) or other state licensed agency. Section 15–7–7 provides a means for the state to terminate the parental rights of unfit parents or parents that are unable to care for their children. The state needs a method to terminate the parental rights of unfit or unable parents so the children will no longer have legal guardians and thus be eligible for adoption. Termination of parental rights in these instances achieves the purpose of § 15–7–7, which is to allow the state to make the children available for adoption.[1] Adoption

---

1. Indeed, G.L.1956 (1988 Reenactment) § 15–7–7 is contained in the Domestic Relations title in a chapter entitled "Adoption of Children." The placement of the statute in this chapter strengthens the argument that the purpose of the statute is to make the child available for adoption.

is a desirable goal for the child because, hopefully, it will provide a stable and permanent parent or parents for the child.

When interpreting a statute in derogation of common law, the statute must be strictly construed. *Town of North Kingstown v. North Kingstown Teachers Association,* 110 R.I. 698, 703, n. 5, 297 A.2d 342, 344 n. 5 (1972). This rule of construction is helpful to us in the present case because the statute in question terminates the natural parent's common law right to associate with his or her own child. It is well established in Rhode Island that custody of a child by the natural parents is a legally protected interest both at common law and by statute. *Bedard v. Notre Dame Hospital,* 89 R.I. 195, 198, 151 A.2d 690, 692 (1959). Strict construction of § 15–7–7(1) leads to the conclusion that because the statute does not plainly provide for a private cause of action, such a right cannot be inferred. If the Legislature intended to permit a private individual to file a petition to terminate parental rights under this statute, it would have clearly expressed this intent when it revised the statute in 1980.[2]

The legislative history of the statute also indicates that a private right to file petitions under § 15–7–7 was not intended. Prior to 1980, petitions to terminate parental rights could only be brought by "any duly licensed child placement agency or governmental child placing agency." This statute was revised in 1980 by P.L.1980, ch. 364, § 2. The revision created what is now § 15–7–7, which states in pertinent part, "The court shall, upon a petition duly filed after notice to the parent and hearing thereon, terminate any and all legal rights of the parent to the child." Heather contends that since the language "duly licensed child placement agency or governmental child placing agency" was not included in the 1980 revision, the Legislature intended that either public agencies or pri-

vate individuals could file the petition. We reject Heather's contention.

Rule 18 of the Rules of Juvenile Proceedings states,

"Involuntary termination of parental rights.—(a) Petition. The department for children and their families or any other agency authorized by law may petition the court for termination of legal rights of the parent or parents to a child."

This rule makes it clear that for purposes of § 15–7–7 a "duly filed" petition is a petition filed by DCYF or another state agency. Thus only DCYF or some other public agency can petition the Family Court for termination of parental rights under § 15–7–7.

Moreover, the statutory scheme of § 15–7–7 does not indicate that a private right to terminate parental rights should be implied in § 15–7–7(1). In 1983 chapter 7 of title 15 was amended by P.L.1983, ch. 232, § 1. That amendment, which is now § 15–7–5, provides that the rights of a noncustodial natural parent may be terminated involuntarily when a petition for adoption is filed by one of the natural parents of the child and his or her new spouse and the child is residing with the petitioners. To determine if termination of parental rights is proper, § 15–7–5 directs that the grounds for termination set out in § 15–7–7 be considered. The effect of § 15–7–5 is to allow a spouse who retains custody of a child after divorce and then wishes to remarry to terminate the parental rights of the former spouse. Then the new spouse is free to adopt the child. If the Legislature intended a private right to terminate parental rights to be a part of § 15–7–7, then the provisions of § 15–7–5 just discussed would be unnecessary. If a private right to terminate parental rights was a part of § 15–7–7, then a spouse who wished to remarry and have the new spouse become a legal parent of

---

2. We note that the Legislature is free to consider whether a private individual should be empowered to petition the Family Court for termination of a natural parent's parental rights. The current statutory scheme of § 15–7–7 is sufficient to terminate parental rights when the child is in DCYF care and an adoption is pending. The Legislature, in its wisdom, may conceive of other situations wherein a private right to terminate parental rights is necessary and then enact appropriate legislation.

the child could have proceeded under § 15–7–7. The fact that the Legislature enacted § 15–7–5 demonstrates that a private right to petition for termination of parental rights is not part of § 15–7–7.

Finally we note that in the present case there is no petition to adopt Richard, Jr., pending before the Family Court. Thus, unless Richard is mistreating or abusing Richard, Jr., there is no legitimate reason for Heather or the state to terminate Richard's parental rights. Section 15–7–7 was not designed to be used as a sword in an ex-spouse's arsenal of weapons against a former mate to preclude involvement of the noncustodial parent forever. A spouse's proper action to prevent his or her ex-spouse from having contact with a child is to make a motion for denial of visitation and custody, which was granted in this case, or for a protective order.

For all these reasons the question certified by the Family Court is answered in the negative, and this case is remanded to the Family Court for proceedings consistent with this opinion.