Cheryl DOWDELL

v.

Peter BLOOMQUIST.

No. 2002–630–Appeal.

Supreme Court of Rhode Island.

March 15, 2004.

Kathleen Managhan, Newport, for Plaintiff.

Donald J. Packer, Peace Dale, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, FLAHERTY, and SUTTELL, JJ.

# OPINION

FLAHERTY, Justice.

"Tree at my window, window tree, My sash is lowered when night comes on; But let there never be curtain drawn Between you and me."

—Robert Frost

In the matter before us, four western arborvitae trees are at the plaintiff's window. Sadly, however, the curtains between the neighboring parties have long since been drawn, forever dividing what was once an amicable relationship between them. The fate of the offending trees now hangs in the balance.

The plaintiff, Cheryl Dowdell, brought this action in Superior Court alleging that the defendant, Peter Bloomquist, planted four western arborvitae trees on his Charlestown property solely to exact revenge against her, to retaliate by blocking her view, and in violation of the spite fence statute, G.L.1956 § 34–10–20.[1] She sought legal and equitable relief. After considering the testimony and evidence presented at a nonjury trial,[2] the presiding Superior Court justice found that the trees were planted to satisfy defendant's malicious intent, not his pretextual desire for privacy, and that defendant had violated § 34–10–20. The trial justice granted plaintiff injunctive relief. We affirm the judgment of the trial justice.[3]

The facts pertinent to this appeal are as follows. The parties' homes are on adjoining lots in a subdivision of Charlestown, each approximately one acre in size. Dow-

---

1. General Laws 1956 § 34–10–20 provides as follows:

    "**Spite fences.**—A fence or other structure in the nature of a fence which unnecessarily exceeds six feet (6') in height and is maliciously erected or maintained for the purpose of annoying the owners or occupants of adjoining property, shall be deemed a private nuisance, and any owner or occupant who is injured, either in the comfort or enjoyment of his or her estate thereby, may have an action to recover damages for the injury."

2. The trial on the merits was consolidated with the hearing on plaintiff's request for a preliminary injunction, in accordance with Rule 65 of the Superior Court Rules of Civil Procedure.

3. This matter was referred to mediation pursuant to Provisional Rule A of the Supreme Court Rules of Appellate Procedure before a retired justice of this Court subsequent to oral argument. The justices sitting on this case did not participate in the mediation process, have no knowledge with respect to any mediation sessions that were conducted and no knowledge as to the reasons why mediation was unsuccessful. However, the case not having been resolved in mediation, we have proceeded to decide this matter.

dell's home sits at a higher elevation than Bloomquist's and has a distant view of the ocean over the Bloomquist property. In June 2000, defendant acquired the home from his mother, Lorraine Bloomquist. Prior to that time, the Dowdell family had an amicable relationship with defendant's mother. Change was in the wind in the fall of 2000, however, when defendant petitioned for a zoning variance from the Charlestown zoning board seeking permission to build a second-story addition to his home. The plaintiff expressed concern about the petition, anxious that the addition would compromise her view of the Atlantic Ocean. For six months the parties argued before the Charlestown Zoning Board of Review as to the merits of the addition. As a result, the relationship between the neighbors became less than friendly. In March 2001, defendant began clearing land and digging holes to plant the disputed trees in a row between their homes. In April, defendant's counsel sent a letter to plaintiff warning him against trespass onto the Bloomquist property. In May, one day after the zoning board closed its hearing on defendant's variance request,[4] defendant began planting the four western arborvitae trees that now stand in a row bordering the property line.[5] Although the forty-foot-high trees enabled little light to pass into Dowdell's second- and third-story picture windows, testimony at trial evidenced that the vegetation was not a bar to the unkind words between the neighbors.

After the trial justice heard four days of testimony and viewed the property, he made a finding that the row of trees were a fence, based on the language of § 34–10–1.[6] He further found that the objective of privacy claimed by defendant was "no more than a subterfuge for his clear intent to spite his neighbors by erecting a fence of totally out of proportion trees." Hence, the trial justice found that the trees constituted a spite fence in violation of § 34–10–20. He noted testimony that plaintiff's real estate values had depreciated by as much as $100,000. Nonetheless, he found that money damages could not adequately compensate her and that equitable relief was more appropriate. Bloomquist was ordered "to cut the four Western Arborvitae to no more than 6' in height and keep them at that level or remove them entirely with no more Western Arborvitae to be planted." [7]

4. The Zoning Board of Review of the Town of Charlestown subsequently granted defendant's dimensional variance request. Although Dowdell appealed the decision to the Superior Court, it was affirmed in March 2003.

5. The western arborvitae were planted directly behind a row of eastern arborvitae already existing on the Dowdell property near its boundary with the Bloomquist land. According to expert testimony at trial, the eastern arborvitae are smaller trees, growing to a height of eight to eleven feet. In contrast, the western arborvitae are capable of growing to a height of seventy feet. Although the Dowdell trees are in excess of six feet, there are no allegations that they were ever placed out of spite and these trees are not the subject of the instant matter. However, the trial justice noted that the Dowdell trees already offered sufficient privacy between the Dowdell and Bloomquist properties and cited this as one reason why he considered defendant's purported privacy motive to be a subterfuge for malicious intent.

6. Section 34–10–1 includes in its definition of lawful fences "[a] hedge" of specified proportions. The trial justice concluded that the four arborvitae trees may be considered a hedge based on expert testimony at trial and that, therefore, the trees constitute a fence.

7. In employing the language ordering that "no more Western Arborvitae [are] to be planted," we assume that the trial justice is restricting the plantings along the property lines and in the nature of a fence.

The defendant timely appealed to this Court. In his appeal, defendant asserts that the offending trees do not constitute a fence. Moreover, defendant contends that even if the trees were considered a fence, the trial justice erroneously granted relief in the face of testimony that the trees serve a useful purpose of privacy for defendant. To support that contention, defendant relies on *Musumeci v. Leonardo*, 77 R.I. 255, 259–60, 75 A.2d 175, 177–78 (1950), for the proposition that when a fence is erected for a useful purpose, despite spiteful motive, no relief may be granted. Moreover, defendant alleges that the trial justice lacked the authority to award injunctive relief based on the holding of *Musumeci* as well as the specific language of the spite fence statute, which states that one "may have an action to recover damages for the injury." Section 34–10–20. Additionally, defendant urges that the trial justice erred by granting relief that amounted to an easement for light or view where no such remedy exists at common law.

Not surprisingly, plaintiff defends the lower court ruling. She asserts that the trial justice had ample authority to award injunctive relief and correctly exercised this authority based on his well-supported finding that the four trees constituted nothing more than a fence erected out of spite.

■ The trial justice found a violation of the spite fence statute based on his careful and deliberate findings of fact and on his credibility assessment of the testimony at trial. We are mindful that factual findings "are entitled to great weight and will not be disturbed by this Court absent proof that they are clearly wrong or that the trial justice overlooked or misconceived material evidence." *Tavares v. Beck*, 814 A.2d 346, 350 (R.I.2003) (per curiam); *Perry v. Garey*, 799 A.2d 1018,

1022 (R.I.2002). We grant the same level of deference to a trial justice's determination of credibility. *See Bogosian v. Bederman*, 823 A.2d 1117, 1120 (R.I.2003). Based on this standard, we decline to disturb the trial justice's findings that the four arborvitae trees planted in a row constitute a fence and that defendant planted them with spiteful intentions. Based on the record before us, we cannot say that the trial justice was clearly wrong or that he overlooked or misconceived material evidence with respect to his findings of fact or credibility.

■ This is the first occasion this Court has had to address the issue of whether a row of trees may be considered a fence within the meaning of the spite fence statute, § 34–10–20. We believe the trial justice properly referred to the definition of "lawful fences" found in § 34–10–1 to understand the simple meaning and legislative intent behind its use of the word "fence." Based upon the language of § 34–10–1, a fence clearly includes a hedge. And based upon the expert testimony relied on by the trial justice, a row of western arborvitae trees may constitute a hedge. However, even if the trees were not a hedge per se, the spite fence statute refers to "[a] fence or other structure in the nature of a fence." The trial justice considered the proximity of the four trees that touched one another, and the broad span of sixty feet across which they spread, and rationally interpreted that the trees were a fence. Although defendant argues that he presented expert testimony that the western arborvitae is not a hedge plant, we nonetheless believe that the trees, when taken as a whole, fall well within the statutory definition of a "structure in the nature of a fence." This may not be the most optimal species for the creation of a hedge owing to their enormous stature and girth. However, it is

specifically because of their towering presence, as well as their relative positioning on defendant's land, that we can consider the trees nothing less than a fence. We are not alone in this assessment. Recently, a California appellate court found a row of evergreen trees to be a fence within the meaning of the California spite fence statute.[8] *Wilson v. Handley*, 97 Cal.App.4th 1301, 119 Cal.Rptr.2d 263 (2002). That court stated,

> "In light of this statutory purpose, a structure need not be built to prevent intrusion from without or straying from within to be a 'fence or other structure in the nature of a fence' within the meaning of the spite fence statute. Instead, the structure need only be built to separate or mark the boundary between adjoining parcels—albeit, in an unnecessarily high and annoying manner." *Id.* at 269.

■ We next consider defendant's contention that the trial justice erroneously discounted defendant's testimony that the trees were erected for the beneficial purpose of privacy. We recognize that some useful purpose for a fence may render the victim of one even maliciously erected without a remedy. In *Musumeci*, this Court determined that a fence served the useful purpose of preventing water from entering the premises of the first floor of the complainant's house. Hence, because the purpose of the fence was not wholly malicious, it was not enjoined as a private nuisance. *Musumeci*, 77 R.I. at 258–59, 75 A.2d at 177 (citing *Burke v. Smith*, 69 Mich. 380, 37 N.W. 838 (1888) (one of the first cases announcing the new American

rule on spite fences, now considered to embody the prevailing modern view)). However, based on the turbulent history between the parties, the provocative statements made by defendant, the notice of trespass letter sent to plaintiff, and the size, timing, and placement of the trees, we cannot say that the trial justice was wrong to give defendant's testimony little weight and to find his claim that the fence was installed to enhance his privacy lacked credibility. In the circumstances of this case, we agree with the trial justice that defendant needed to provide more than just privacy as justification for the fence. This is especially true when a row of smaller arborvitae already stood between the homes. As the trial justice noted, "Accepting privacy alone would simply result in the statute being rendered meaningless and absurd." The very nature of a fence is such that privacy could always be given as the reason for erecting it. In an egregious case such as this, where evidence of malicious intent plainly outweighs the discounted benefit claimed by defendant, the court correctly found defendant's actions to violate the spite fence statute.

■ That said, the final issue to be determined is whether injunctive relief was an appropriate remedy for the aggrieved plaintiff. The defendant relies on *Musumeci* for the proposition that plaintiff is not entitled to injunctive relief because the loss of light and view that she alleges is not a private nuisance that equity will enjoin. Moreover, he maintains that the spite fence statute provides only for a monetary damages remedy. However,

---

8. Section 841.4 of the California Civil Code, entitled "spite fences," provides as follows: "Any fence or other structure in the nature of a fence unnecessarily exceeding 10 feet in height maliciously erected or maintained for the purpose of annoying the owner or occupant of adjoining property is a private nuisance. Any owner or occupant of adjoining property injured either in his comfort or the enjoyment of his estate by such nuisance may enforce [certain code-prescribed] remedies * * *." Cal. Civil Code § 841.4 (West 1982).

upon careful review of the language of § 34–10–20, this Court's discussion in *Musumeci*, and the law of private nuisance, we believe that injunctive relief is an available remedy for a violation of the spite fence statute. Consequently, we affirm the remedy ordered by the trial justice that the offending western arborvitae trees be topped off at six feet, or otherwise removed entirely.

■ The defendant mischaracterizes *Musumeci* as both relevant and conclusive authority on remedy in the instant case. In *Musumeci*, it was determined that a wall standing less than six feet tall and which served a useful purpose of blocking water run off onto the plaintiff's property was not a spite fence and therefore not governed by G.L.1938 ch. 645, § 20,[9] the predecessor to the present spite fence statute, § 34–10–20. The Court then said that "a fence erected on one's own land for the purpose of shutting off light and air to an adjacent owner is not unlawful unless it violates G.L.1938, chap. 645, § 20." *Musumeci*, 77 R.I. at 259–60, 75 A.2d at 177. Having found no statutory violation, the *Musumeci* Court addressed the issue of whether an equitable remedy was available to the aggrieved party for the shutting off of light and air out of malice, notwithstanding the inapplicability of the spite fence statute. The Court held that absent a tangible violation to the adjacent landowner's rights, the fence could not be enjoined as a private nuisance because under the common law he has no right to light and air coming across the land. Hence, there was no nuisance. *Id.* at 260, 75 A.2d at 177–78. We distinguish *Musumeci* from the instant case based on the factual and legal distinctions at play in each case. Although *Musumeci* confirms that there is no common law right to light and air, it does not preclude equitable relief for erection of a spite fence. When the spite fence statute is violated, which was not the case in *Musumeci*, the offending action is deemed a "private nuisance." *See* § 34–10–20. Under private nuisance law, equitable relief is an appropriate remedy. *See Harris v. Town of Lincoln*, 668 A.2d 321 (R.I.1995) (private nuisance of emission of noises, odors, and vibrations by sewer-processing facility pumping station onto neighboring residential property warranted injunctive relief, in addition to monetary damages); *Weida v. Ferry*, 493 A.2d 824 (R.I.1985) (noxious smells and flies emanating from dairy farm operations more suitably classified as a private nuisance rather than negligence action; case remanded for new trial with presumption that equitable relief would be an appropriate remedy had the farm not already ceased operations by this time); *DeNucci v. Pezza*, 114 R.I. 123, 329 A.2d 807 (1974) (injunctive relief properly granted upon trial justice's finding that noise from freight trucks hitching and unhitching in parking lot during early morning hours was unreasonable private nuisance interfering with the plaintiff's use and enjoyment of his residential property).

■ We look to the case of *Wilson* for additional support that a spite fence that blocks light, air, or view is properly considered an actionable private nuisance because the statute defines it as such. In

---

9. General Laws 1938 ch. 645, § 20 closely mirrors the language of § 34–10–20 and provided the following:

"A fence, or other structure in the nature of a fence, which unnecessarily exceeds 6 feet in height, and is maliciously erected or maintained for the purpose of annoying the owners or occupants of adjoining property, shall be deemed a private nuisance, and any such owner or occupant who is injured, either in the comfort or enjoyment of his estate thereby, may have an action of trespass on the case to recover damages for such injury."

*Wilson*, the court held that a row of trees blocking the plaintiff's view of Mt. Shasta may be considered a violation of the statute even though the fence interfered with nothing more than light and air. The court acknowledged that although interference with light and air was not considered a nuisance under the general definition of "nuisance," the spite fence statute never specified that the fence need interfere with more than light and air for it to be considered a nuisance. The court concluded that "we are not at liberty to read any such additional requirement into the statute." *Wilson*, 119 Cal.Rptr.2d at 270. We agree. What makes a spite fence a nuisance under § 34–10–20 is not merely that it blocks the passage of light and view, but that it does so "unnecessarily" for the malicious purpose of "annoyance." This is a notable distinction.

Finally, defendant correctly asserts that the statute specifically allows for "an action to recover damages." Specifically, the statute states that one who is injured by a spite fence "*may* have an action to recover damages for the injury." Section 34–10–20. (Emphasis added.) However, contrary to defendant's assertion, we believe this language merely sanctions the additional remedy of damages, but does not exclude injunctive relief, which is a remedy logically rooted in the nature and purpose of the statute. To support this holding, we look to the remedial practice in other states that recognize the erection of a spite fence as actionable. Connecticut, Idaho, Indiana, Massachusetts, Montana, New Hampshire, and South Dakota all allow injunctive relief for violations of spite fence law.[10] Especially illustrative is the law as it stands in Massachusetts, whose statute is strikingly similar to § 34–10–20. The Massachusetts statute provides:

"A fence or other structure in the nature of a fence which unnecessarily exceeds six feet in height and is maliciously erected or maintained for the purpose of annoying the owners or occupants of adjoining property shall be deemed a private nuisance. Any such owner or occupant injured * * * may have an action of tort for damages * * *." Mass. Gen. Laws Ann. ch. 49, § 21 (West 1994).

In interpreting this law, the Supreme Judicial Court of Massachusetts recognized that despite the lack of explicit language, the court had the authority to order a spite fence to be "abated," in addition to damages and costs. *Rice v. Moorehouse*, 150 Mass. 482, 23 N.E. 229 (1890) (trial justice properly ordered abatement of so much of a spite fence as exceeded six feet in height). The Court relied on the law of nuisance as the basis for its decision, just as we do today.

### Conclusion

For the reasons set forth above, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.

Justice GOLDBERG did not participate.

FLANDERS, Justice, concurring in part and dissenting in part.

Although I concur with that portion of the majority opinion affirming the Superior Court's finding that the spite-fence statute, G.L.1956 § 34–10–20, applies to this case, I would hold that the Superior Court

---

10. *See* Conn. Gen.Stat. Ann. § 52–480 (West 1991); Ind.Code Ann. §§ 32–26–10–1, 32–26–10–2 (Lexis Nexis 2002); Mass. Gen. Laws Ann. ch. 49, § 21 (West 1994); *Sundowner, Inc. v. King*, 95 Idaho 367, 509 P.2d 785 (1973); *Haugen v. Kottas*, 307 Mont. 301, 37 P.3d 672 (2001); *Horan v. Byrnes*, 72 N.H. 93, 54 A. 945 (1903); *Racich v. Mastrovich*, 65 S.D. 321, 273 N.W. 660 (1937).

did not have the power to issue an injunction in favor of the plaintiff for the defendant's violation of that statute because it provides only for "an action to recover damages." Thus, I conclude that the trial justice erred in awarding injunctive relief because the applicable rules of statutory construction require us to strictly construe statutes such as this one—granting rights and remedies not recognized at common law—and to refrain from inferring causes of action and statutory remedies that are not contained in the express language of the statute. Accordingly, it is up to the General Assembly, not this Court, to provide a cause of action for equitable relief to parties entitled to recover damages under the spite-fence statute.

The spite-fence statute, § 34–10–20, specifically states that a party seeking relief pursuant to its terms "may have *an action to recover damages* for the injury." (Emphasis added.) It does not say that any injured owner or occupant may have an action to obtain equitable or injunctive relief for any such injury. Citing this limited right to recover damages for a violation of the spite-fence statute, defendant argues that the trial justice erred in awarding injunctive relief to this plaintiff when the statute creating such a right provided plaintiff with no such cause of action or remedy. I agree with this conclusion.

"It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute *literally* and must give the words of the statute their *plain and ordinary meanings*." *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1226 (R.I. 1996) (Emphases added.) As defendant correctly notes in his brief, the plain and obvious meaning of "an action to recover damages" does not include an equitable remedy such as an injunction. Although the trial justice conclusorily said that he believed a damages remedy "cannot compensate [plaintiff] for this spiteful act" and that "[e]quitable relief is far more appropriate," the evidence in this case showed that the spite fence in question caused a permanent and quantifiable diminution in the value of plaintiff's property, one that could be remedied via an award of damages.

More importantly, however, even if such a damages remedy was inadequate, that fact alone would not warrant a court's awarding relief that the General Assembly declined to make available to injured parties when enacting the statute in question. *Sindelar v. Leguia,* 750 A.2d 967, 970 & n. 1, 971–72 (2000) (per curiam) (strictly interpreting wrongful death act, which, in derogation of common law, permitted certain enumerated members of decedent's family to pursue an action to recover "pure economic damages" for wrongful-death, but no additional type of relief).

In addition, it is well settled that we strictly construe statutes such as this one that establish rights not recognized at common law or that operate in derogation of the common law. *Sindelar,* 750 A.2d at 970; *Providence Journal Co. v. Rodgers,* 711 A.2d 1131, 1134 (R.I.1998) ("[L]egislation 'that is in derogation of the common law' is subject to strict construction."); *Accent Store Design, Inc.,* 674 A.2d at 1226 (strictly construing public-works-bonding statute establishing rights not recognized at common law). In *Sindelar,* 750 A.2d at 970, we strictly interpreted the wrongful death act because, like § 34–10–20, its provisions were in derogation of the common law. In that case, the question was which surviving family members were entitled to obtain relief for a violation of the act and what type of remedy were they entitled to obtain. *Sindelar,* 750 A.2d at 969–70. Noting that the plain statutory language permitted decedent's father to recover

damages despite his being an absentee parent, we refused to carve out an exception to the act by judicial fiat. *Id.* at 971. Nor did we permit recovery for loss of consortium or for any other type of relief other than the "pure economic damages" that the statute provided for, *id.* at 972,—however inadequate or insufficient such "pure economic damages" might prove to be. Here, as in *Sindelar*, "our assigned task is simply to interpret the [a]ct, not to redraft it." *Id.*

In this case, the spite-fence statute creates a right not recognized at common law because it deems to be a private nuisance a fence or a fence-like structure that unnecessarily exceeds six feet in height and that "is maliciously erected or maintained for the purpose of annoying the owners or occupants of adjoining property." Section 34–10–20. As this Court observed in *Musumeci v. Leonardo*, 77 R.I. 255, 260, 75 A.2d 175, 178 (1950), under the common law

> "[a] landowner has no right to the light and air coming to him across his neighbor's land. True, if the light and air be shut off damage may well result to his property for residential purposes, as is alleged here, but it is *damnum absque injuria*. It is damage which the law does not recognize because there is no injury. Where there is no right, a deprivation works no injury."

Courts should not infer causes of actions and remedies that are not expressly provided for in a statute such as this one that creates a right and a remedy that was not available at common law. Indeed, as a general rule, "[w]hen a statute 'does not plainly provide for a private cause of action * * * such a right cannot be inferred.'" *Stebbins v. Wells*, 818 A.2d 711, 716 (R.I. 2003) (per curiam); *see also Pontbriand v. Sundlun*, 699 A.2d 856, 868 (R.I.1997) (re-

fusing to find implied right of action under statute affording no personal remedy).

For example, in *Stebbins*, 818 A.2d at 716, this Court refused to infer a private cause of action when interpreting G.L.1956 § 5–20.8–5(b), which required that every purchase and sale agreement for residential real estate contain an acknowledgement that a completed real estate disclosure form had been provided to the buyer by the seller. The Court noted that this statute expressly provided a specific remedy: namely, that each violation of the statute subjected the seller or his or her agent to a civil penalty in the amount of $100. *Stebbins*, 818 A.2d at 716. Given that the statute expressly provided for a particular remedy—a civil fine for violations of the act, but not a private lawsuit for damages—this Court refused to permit the buyer to sue for damages under the statute. *Id.*

Similarly, in *In re John*, 605 A.2d 486, 487–88 (R.I.1992), this Court refused to infer a remedy not expressly provided for in the statute when interpreting G.L.1956 § 15–7–7, which allowed state agencies to petition the court for termination of parental rights, but did not afford private individuals the same right. Noting that this statute operated in derogation of the common law—in that it terminated the natural parent's common-law right to associate with his or her own child—this Court strictly interpreted the statute and refused to allow a mother to obtain a remedy seeking termination of her former husband's parental rights when the statute did not expressly provide for such a remedy. *In re John*, 605 A.2d at 488.

By a parity of reasoning, in this case we should not infer a right to seek and obtain equitable relief for a violation of the spite-fence statute because, like the statutes at issue in *Sindelar*; *Stebbins*, and *In re John*, the statute already expressly pro-

vides a remedy—albeit not one for the type of relief that plaintiff would prefer, but one "to recover damages for the injury." Section 34–10–20.

Moreover, the mere fact that the statute deems the creation of a spite fence to constitute a private nuisance does not imply that the General Assembly intended for an equitable remedy to be available for such a nuisance when the statute fails to provide for such relief. Deeming the erection of a spite fence to constitute a private nuisance only suffices to establish the perpetrator's civil *liability* for violating the statute. But it does not speak to what civil *remedy* is available for creating such a private nuisance, especially when an equitable remedy was not available to abate a spite fence at common law. Moreover, if the General Assembly's purpose had been to incorporate any and all remedies that might be available to remedy a private nuisance at common law, why would it have specified in the statute that an aggrieved party may have an action to recover damages for the injury? Is this not a classic instance of *expressio unius est exclusio alterius* ("to express or include one thing implies the exclusion of the other")? If the General Assembly had intended to provide for both equitable and legal relief, why would it not have said so expressly, instead of providing only for a damages action? When the General Assembly wants to empower courts to award equitable or injunctive relief, in addition to damages, for the violation of a statutorily created right, it certainly knows how to do so. *See, e.g.,* Deceptive Trade Practices Act, G.L.1956 § 6–13.1–5.2(b) ("In any action brought under this section, the court may in its discretion order, in addition to damages, injunctive or other equitable relief."). As this Court observed many years ago in *Henry v. Cherry & Webb,* 30 R.I. 13, 37, 73 A. 97, 107 (1909), "[t]he function of adjusting remedies to rights is a legislative rather than a judicial one, and up to the present time the legislature of this [s]tate has omitted to provide a remedy" for the right in question. When, as here, "a statute expressly provides [a] remed[y], courts must be extremely reluctant to expand its sweep by augmenting the list of prescribed anodynes." *Sterling Suffolk Racecourse Limited Partnership v. Burrillville Racing Association, Inc.,* 989 F.2d 1266, 1270 (1st Cir.1993). Instead, a court "should ordinarily conclude that the legislature provided precisely the redress it considered appropriate," and should not expand the remedies available. *Id.*

The majority relies on *Rice v. Moorehouse,* 150 Mass. 482, 23 N.E. 229, 229 (1890), for the proposition that both damages and injunctive relief are appropriate sanctions to impose on the violator of a spite-fence statute. But the language in the Massachusetts spite-fence statute that the court construed in *Rice*—namely, Mass. Gen. Laws ch. 348, §§ 1–2 (1887)—was markedly different from the language of § 34–10–20.[11] Chapter 348, § 2 of the Mass. Gen. Laws provided that one injured by a spite fence had "an action of tort for the damage sustained thereby, and *the provisions of chapter one hundred and eighty of the Public Statutes concerning actions for private nuisances shall be applicable thereto.*" (Emphasis added.) As

---

11. The majority quotes the text of Mass. Gen. Laws Ann. ch. 49, § 21 (West 1994) to buttress its conclusion that the language in the Massachusetts statute is "strikingly similar" to the language of G.L.1956 § 34–10–20. But the statute that the *Rice* court interpreted was not the 1994 law quoted by the majority but

an earlier spite-fence statute—namely, Mass. Gen. Laws ch. 348, §§ 1–2 (1887)—one that expressly incorporated an abatement and removal statute for remedying a nuisance that is conspicuously absent from the provisions of § 34–10–20.

the *Rice* court noted, chapter 180 specifically "authorize[d] the court * * * to enter judgment that the nuisance be abated and removed." *Rice*, 23 N.E. at 229. Therefore, unlike the provisions of § 34–10–20, the text of the statute at issue in *Rice* specifically provided that a law authorizing the abatement and removal of a private nuisance "shall be applicable" to the statutorily created right of action for spite fences. *See* Mass. Gen. Laws ch. 348, § 2. Here, § 34–10–20 contains no such reference to a statute authorizing the enforcing court to abate or remove the nuisance.

In addition, the other cases the majority cites for support are inapposite because they interpret either a statute that, unlike § 34–10–20, provides specifically for abatement of the offending structure, *e.g.*, *Horan v. Byrnes*, 72 N.H. 93, 54 A. 945 (1903) (interpreting a statute that provided for both damages and abatement of a spite fence), or they do not interpret a spite-fence statute at all; rather, they merely establish a rule of law through common-law adjudication that deems a spite fence to be a nuisance, with the court judicially providing whatever remedies may be available at common law to abate such a private nuisance. *See Sundowner, Inc. v. King*, 95 Idaho 367, 509 P.2d 785, 785–87 (1973) (adopting as a rule of common law that a spite fence is a nuisance, and as such, holding that the lower court did not err in abating and enjoining the structure); *Haugen v. Kottas*, 307 Mont. 301, 37 P.3d 672, 674 (2001) (holding as a matter of common law that the erection of a spite fence will give rise to an action for injunctive relief and damages); *Racich v. Mastrovich*, 65 S.D. 321, 273 N.W. 660, 663 (1937) (adopting a "common-sense view" that a spite fence entitles the plaintiff to injunctive relief). In this state, however, as we have seen, a spite fence was not a private nuisance at common law, and the

statute deeming it a private nuisance provides only for a damages remedy.

Given that the General Assembly easily could have included a cause of action for equitable remedies in the spite-fence statute, we should deem this omission as evincing a legislative intent to limit a spite-fence claimant's remedy to "an action to recover damages." Section 34–10–20. *Cf. Accent Store Design, Inc.*, 674 A.2d at 1226 ("The General Assembly could easily have exercised its power to create a cause of action for the failure to bond by simply adding a sentence or a phrase to the statute."); *see also In re John*, 605 A.2d at 488 ("If the Legislature intended to permit a private individual to file a petition to terminate parental rights under this statute, it would have clearly expressed this intent when it revised the statute in 1980.").

Also, the General Assembly has had more than fifty years to act since the 1950 *Musumeci* decision, in which this Court indicated that the common law provided no equitable relief for the erection of a spite fence, and noted that the spite-fence statute only provided for a damages remedy. Nevertheless, the General Assembly has declined to expand that statute to provide for equitable relief. "But inaction upon the part of the legislature, however long continued, can not confer legislative functions upon the judiciary." *Henry*, 30 R.I. at 38, 73 A. at 107. Accordingly, a party seeking an injunction under the spite-fence statute should petition the Legislature, not this Court, for relief, because for this Court to create such a cause of action and remedy "would be interpretation by amendment" of the statute. *Rhode Island Federation of Teachers, AFT, AFL–CIO v. Sundlun*, 595 A.2d 799, 802 (R.I.1991). In other words, "the remedy is to be found in the state house not the courthouse." *Malinou v. Board of Elections*, 108 R.I. 20, 35, 271 A.2d 798, 805 (1970).

838

## Conclusion

This Court should reverse that portion of the Superior Court judgment awarding plaintiff injunctive relief. The Superior Court improperly awarded relief that the spite-fence statute does not authorize. Also, our rules of construction require us to accord statutes their plain and ordinary meaning, to strictly construe statutes such as this one that grant rights not recognized at common law, and to refrain from inferring causes of action and providing remedies that are not contained in the express language of the statute. Accordingly, it is up to the General Assembly, not this Court, to expand the remedies available to parties seeking relief under the spite-fence statute.